**No.**

---

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

---

### IN RE: ROMAN STORM

---

Petition for Writ of Mandamus
from the United States District Court
Southern District of New York
Hon. Katherine Polk Failla
*United States v. Roman Storm*
Case No. 23 Cr. 430 (KPF)

---

**WAYMAKER LLP**
Brian E. Klein*
bklein@waymakerlaw.com
Keri Curtis Axel*
kaxel@waymakerlaw.com
Becky S. James*
bjames@waymakerlaw.com
Kevin M. Casey*
kcasey@waymakerlaw.com
Viviana Andazola Marquez*
vandazolamarquez@waymakerlaw.com
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

**HECKER FINK LLP**
David E. Patton
dpatton@heckerfink.com
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

Attorneys for Petitioner Roman Storm
*Admissions in process

# <u>TABLE OF CONTENTS</u>

**<u>PAGE</u>**

I.     INTRODUCTION ........................................................................1

II.    RELIEF SOUGHT .....................................................................2

III.   ISSUE PRESENTED ..................................................................3

IV.   STATEMENT OF FACTS ..........................................................3

V.    LEGAL STANDARD ...............................................................5

     A.    The Mandamus Standard .....................................................5

     B.    Federal Rule of Criminal Procedure 16 ...............................6

VI.   REASONS WHY THE WRIT SHOULD ISSUE .......................10

     A.    Mr. Storm Has No Other Adequate Means to Obtain the Relief Sought ........................................................................11

     B.    Mr. Storm Has a Clear and Indisputable Right to a Writ ..................17

           1.    Supreme Court Case Law Makes Clear that the District Court Had No Authority to Contravene Rule 16 .....................18

           2.    Second Circuit Precedent Also Clearly Limits the District Court's Authority to Contravene Federal Discovery Rules and Laws .........................................................20

           3.    Other District Courts Have Concluded They Lack Authority to Order Pretrial Disclosure of Defense Expert Witnesses in the Absence of a Triggering Request ................21

     C.    The Writ Is Appropriate Under the Circumstances ...........26

VII.  CONCLUSION .........................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988) ........................................................................19

*Berman v. United States,*
    302 U.S. 211 (1937) ........................................................................16

*Carlisle v. United States,*
    517 U.S. 416 (1996) ........................................................................18

*Cheney v. U.S. Dist. Court*,
    542 U.S. 367 (2004) ..........................................................................6

*Cuyler v. Sullivan,*
    446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)....................13

*Dietz v. Bouldin,*
    579 U.S. 40 (2016) ..........................................................................19

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994) ........................................................................16

*Flanagan v. United States*,
    465 U.S. 259 (1984) ........................................................................16

*Herring v. New York,*
    422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975)......................13

*In re Burlington N., Inc.*,
    822 F.2d 518 (5th Cir. 1987) ..........................................................15

*In re City of New York,*
    607 F.3d 923 (2d Cir. 2010)........................................................6, 11

*In re E.E.O.C.*,
    207 F. App'x 426 (5th Cir. 2006) ...................................................15

*In re EchoStar Commc'ns Corp.*,
    448 F.3d 1294 (Fed. Cir. 2006) ......................................................15

*In re Roman Catholic Diocese of Albany, New York,*
    745 F.3d 30 (2d Cir. 2014).......................................................................11

*In re Sims,*
    534 F.3d 117 (2d Cir.2008)......................................................................17

*In re The City of New York,*
    607 F.3d 923 (2d Cir. 2010).....................................................................11

*In re United States*,
    834 F.2d 283 (2d Cir. 1987).....................................................................10

*In re United States*,
    945 F.3d 616 (2d Cir. 2019).................................................................6, 20

*In re von Bulow,*
    828 F.2d 94 (2d Cir. 1987).............................................................. 6, 11, 28

*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) ......................16

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994).......................................................................15

*S.E.C. v. Rajaratnam,*
    622 F.3d 159 (2d Cir. 2010)............................................................ 6, 17, 26

*Thomas v. Arn,*
    474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).........................................19

*U.S. v. Fei Ye,*
    436 F.3d 1117 (9th Cir. 2006) ..................................................................21

*United States v. Adlman*,
    68 F.3d 1495 (2d Cir. 1995).....................................................................14

*United States v. Antoine*,
    No. CR10-229,
    2012 WL 3279207 (W.D. Pa. Aug. 9, 2012) .......................................................9

*United States v. Bump*,
    605 F.2d 548 (10th Cir. 1979) ..................................................................22

iii

*United States v. Burke,*
No. 3:12-CR-318-D,
2015 WL 1931327 (N.D. Tex. Apr. 29, 2015) ....................................................9

*United States v. Chandler,*
56 F.4th 27 (2d Cir. 2022) ...............................................................13

*United States v. Coppa,*
267 F.3d 132 (2001).....................................................................26

*United States v. Crinel,*
No. CR 15-61,
2016 WL 5779778 (E.D. La. Oct. 4, 2016) .........................................9

*United States v. Cronic,*
466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)......................13

*United States v. Dailey*,
155 F.R.D. 18 (D.R.I. 1994) ......................................................... 22, 23

*United States v. Danielson,*
325 F.3d 1054 (9th Cir. 2003) ........................................................13

*United States v. De Leon-Navarro,*
No. 10-CR-188A SR,
2012 WL 2254630 (W.D.N.Y. June 15, 2012)...................................10

*United States v. Harwin*,
No. 2:20-CV-115-JLB-MRM,
2021 WL 5707579 (M.D. Fla. Oct. 29, 2021) ...................................22

*United States v. Hasting,*
461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)........................19

*United States v. Impastato*,
535 F. Supp. 2d 732 (E.D. La. 2008)........................................... 24, 25

*United States v. Johnson,*
228 F.3d 920 (8th Cir. 2000) .............................................................9

*United States v. Layton,*
90 F.R.D. 520 (N.D. Cal. 1981)........................................................24

*United States v. Maxwell,*
   832 F. App'x 21 (2d Cir. 2020) .................................................. 16, 17

*United States v. Nacchio*,
   555 F.3d 1234 (10th Cir. 2009) ........................................................25

*United States v. Nobles,*
   422 U.S. 225 (1975)..........................................................................14

*United States v. Payner,*
   447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).....................19

*United States v. Penn*,
   No. 20-CV-00152-PAB,
   2021 WL 4868439 (D. Colo. Oct. 19, 2021) ....................................22

*United States v. Poulsen,*
   No. 06–129 (S.D.Ohio September 28, 2007)....................................25

*United States v. Punn*,
   737 F.3d 1 (2d Cir. 2013)................................................................16

*United States v. Thompson*,
   No. CR19-159-RSL,
   2022 WL 841133 (W.D. Wash. Mar. 21, 2022) .......................... 22, 23

*United States v. Williams,*
   792 F. Supp. 1120 (S.D. Ind. 1992)................................................24

*Wardius v. Oregon*,
   412 U.S. 470 (1973)........................................................................22

*Weatherford v. Bursey,*
   429 U.S. 545 (1977).........................................................................12

**Statutes**

28 U.S.C. § 1291 ...............................................................................15

**Rules**

Fed. R. Civ. P. 26(b)(3).......................................................................13

v

Fed. R. Crim. P. 12.2(b)................................................................7

Fed. R. Crim. P. 15....................................................................20

Fed. R. Crim. P. 16............................................................. passim

Fed. R. Crim. P. 57............................................................. passim

Fed. R. Crim. P. 703..................................................................7

Fed. R. Crim. P. 705..................................................................7

Fed. R. Evid. 104.....................................................................19

Fed. R. Evid. 702............................................................... passim

Fed. R. Evid. 801.....................................................................10

## Other Authorities

Wright & Miller § 251 History and Policy Considerations,
2 Fed. Prac. & Proc. Crim. § 251 (4th ed.) ..............................................9

## I. INTRODUCTION

On October 10, 2024, the district court (Hon. Katherine Polk Failla) ordered the defense, over objection, to make pretrial expert witness disclosures, including the substance of the anticipated expert testimony, even though the defense had not made a request for expert witness disclosures from the government. Federal Rule of Criminal Procedure 16 makes clear that any obligation by the defense to disclose the otherwise confidential substance of expert testimony in advance of trial is triggered only "*if*" the defense first requests such expert witness disclosures from the government **and** the government complies. Fed. R. Crim. P. 16(b)(1)(C)(i). Here, Petitioner-Defendant Roman Storm made an intentional decision not to make such a request so as not to trigger reciprocal discovery obligations under Fed. R. Crim. 16. Yet, the district court's order – which relies on its "inherent authority" and a constellation of evidence rules – forces Mr. Storm to disclose his expert witnesses, and therefore much of his defense strategy, before trial. To the Petitioner's knowledge, no court has ever compelled the disclosure of defense experts without the defendant first requesting disclosure under Rule 16 and the government complying with that defense request.

This case presents the following question: Whether a district court has the inherent authority to contravene the plain language of procedural rules promulgated by the Supreme Court and approved by Congress. The answer is a

1

clear and indisputable "no." Absent this Court's intervention, the defense will be required to reveal highly confidential information that is otherwise protected by the work product doctrine and the Sixth Amendment. A writ of mandamus should issue because Mr. Storm has no other adequate means to remedy the district court's clearly erroneous ruling, and this is the sort of pretrial discovery order that this Court has found appropriate for mandamus relief. Lastly, in light of recent amendments to Rule 16, this is an issue that is likely to repeatedly arise without the opportunity for appellate review post-judgment. Lower courts and litigants would benefit greatly from resolution of the question presented.

## II.     RELIEF SOUGHT

Mr. Storm respectfully requests that the Court issue a writ of mandamus overturning the district court's order compelling him to disclose the substance of his experts' testimony in advance of trial despite not triggering the reciprocal discovery obligations under Rule 16. Given that the district court has ordered Mr. Storm to provide expert disclosure on November 4, 2024, and that trial is set for December 2, 2024, Mr. Storm also requests an immediate stay of the district court's order. Mr. Storm has requested a stay from the district court, and unless granted, will file an emergency motion for stay in this Court following the filing of this petition for writ of mandamus.

### III. ISSUE PRESENTED

Whether a district court has the inherent authority to contravene the plain language of Federal Rule of Criminal Procedure 16 by ordering pretrial disclosure of defense expert witness information, where the defense made no request for government disclosure of its expert witness information nor did the government comply with any such request, both of which are required under Rule 16 to trigger a defense pretrial disclosure obligation.

### IV. STATEMENT OF FACTS

On August 21, 2023, the government filed its indictment against Roman Storm, alleging three counts of conspiracy:  (1) money laundering; (2) operating an unlicensed money transmitting business; and (3) violating the International Emergency Economic Powers Act.  (Dkt 1.)  Mr. Storm pled not guilty to all three charges.  (Dkt. 6.)  Trial was initially scheduled for September 23, 2024.  (Dkt. 17.)

On July 5, 2024, Mr. Storm requested a trial continuance.  (Dkt. 67.)  The district court granted that request, and on July 15, 2024, the district court issued a revised scheduling order setting trial to begin on December 2, 2024.  (*Id*.).

On September 18, 2024, the government submitted a letter motion requesting, among other things, that the court "order the parties to produce expert disclosures substantively consistent with the notice required by Federal Rules of

3

Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C)." (*See* Dkt. 79.)[1] On September 25, 2024, the defense opposed the government's letter motion, including its request to order the defense to make expert disclosures under Rule 16, on the basis that the defense had not made a triggering request for expert witness disclosures. (*See* Dkt. 82.)[2]

On October 10, 2024, the district court gathered the parties to resolve the parties' pretrial disputes. At the hearing, the government acknowledged that "the issue of the Court ordering pretrial expert disclosures is, as far as we can tell, an issue of first impression, not just in this district, but in this Circuit." (Transcript of October 10, 2024 Oral Argument ("Tr.") 8:10-13.)[3] The government also acknowledged that "the specific aspects of Rule 16 that require disclosures are triggered by defense request for disclosures." (Tr. 11:15-17.) Nevertheless, the government argued that the court could order pretrial defense disclosure of expert witness information based on the "underlying purpose" of Rule 16 and as part of its "gatekeeping authority" under Federal Rule of Evidence 702. (Tr. 11:17-12:8.) The defense objected, noting that Rule 16 was clear that the pretrial disclosure of

---

[1] A copy of the government's letter motion is attached hereto as Exhibit A, excluding lengthy exhibits not essential to understand the matters set forth in the petition.
[2] A copy of the defense letter opposition is attached hereto as Exhibit B
[3] A copy of the transcript of the oral argument is attached hereto as Exhibit C.

4

defense expert witness information is triggered only upon defense request and that

Federal Rule of Evidence 702 does not "trump" Rule 16. (Tr. 12:25-13:3.)

The district court noted the "paucity of case law" on the issue and stated that

she polled her colleagues in the Southern District of New York. (Tr. 21:15-19.)

The court explained that she considered the "majority view" of her colleagues that

she had the "inherent power" to order pretrial disclosures, and also considered her

authority under Federal Rule of Criminal Procedure 57, and the Federal Rules of

Evidence. (Tr. 22:18-23; 23:14-24:8; 24:22-25:6.) Concluding that she had the

authority to do so under one or more of these sources, the district court ordered the

parties to exchange initial expert witness disclosures by November 4, 2024 and

rebuttal expert disclosures by November 11, 2024. (Tr. 25:18-22.) In issuing this

pretrial disclosure order, the district court acted in contravention of Rule 16's plain

language, Second Circuit precedent, and existing district court analysis.

## V.   LEGAL STANDARD

### A.    The Mandamus Standard

Three conditions must be satisfied for the Court to issue a writ of

mandamus: "(1) the petitioner must 'have no other adequate means to attain the

relief [he] desires;' (2) the petitioner must satisfy 'the burden of showing that [his]

right to issuance of the writ is clear and indisputable;' and (3) the issuing court

'must be satisfied that the writ is appropriate under the circumstances.'" *In re*

*United States*, 945 F.3d 616, 623 (2d Cir. 2019) (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-381 (2004)).

While writs of mandamus are seldom issued to overturn discovery rulings "when a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment, the writ of mandamus provides an escape hatch from the finality rule." *S.E.C. v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010) (citing *In re von Bulow,* 828 F.2d 94, 97 (2d Cir. 1987)) (internal quotes omitted). A writ of mandamus is appropriate where, as here, there is a "novel and significant question of law" whose resolution "will aid in the administration of justice." *Id.* (citing *In re City of New York,* 607 F.3d 923, 939 (2d Cir. 2010)).

### B.    Federal Rule of Criminal Procedure 16

The operative Rule at issue here is Federal Rule of Criminal Procedure 16, and that Rule is clear. The defendant's pretrial disclosure obligation as to expert witnesses is triggered only "***if***" the defense makes a request for expert witness disclosure from the government **and** the government complies with the request:

**(b) Defendant's Disclosure.**

**(1) Information Subject to Disclosure**.

\* \* \*

**(C) Expert Witnesses.**

6

**(i) Duty to Disclose.** At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, *if*:

• the defendant requests disclosure under (a)(1)(G) and the government complies; or

• the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

Fed. R. Crim. P. 16 (emphasis added). The language of the rule could not be more plain. The defendant's obligation to produce expert witness information prior to trial is only triggered *if* the defendant requests the same disclosures from the government and the government complies with the request (or if the defendant intends to introduce mental condition evidence, which is not at issue here).

The presence of a reciprocal discovery trigger was no accident by the Supreme Court or Congress. In fact, the legislative history of Rule 16 clearly reflects that Congress contemplated an independent right to obtain discovery from a criminal defendant but crafted Rule 16 as a reciprocal obligation to assuage any constitutional concerns. "The House bill had changed this for constitutional reasons – requiring a defendant, upon request, to give the prosecution material that may be incriminating raises very serious 5th Amendment problems. These problems are overcome by making discovery reciprocal." *See* 121 Cong. Rec.

7

H7859-7865 (daily ed. July 30, 1975) (PDF) (discussing the House bill adopting

reciprocal discovery under Rule 16 because of 5th Amendment concerns). The

1993 amendment to Rule 16 was accompanied by "Notes of Advisory Committee

on Rules" which state, "Like other provisions in Rule 16, subdivision (a)(1)(E)

requires the government to disclose information regarding its expert witnesses if

the defendant first requests the information. Once the requested information is

provided, the government is entitled, under (b)(1)(C) to reciprocal discovery of the

same information from the defendant."

> As one of the leading federal practice commentators has observed:
>
> When the Advisory Committee began work on the amendments that were ultimately adopted in 1975, it concluded that the government should be given an unconditional access to discovery. Proposed Rule 16(b), as drafted by the Advisory Committee and approved by the Supreme Court in 1974, took this approach. ***The House of Representatives, troubled by constitutional doubts, revised the rule to give the government a right of discovery only if defendant has requested and obtained similar discovery.*** Although the Senate accepted the Advisory Committee's proposal for unconditional discovery, the Conference Committee adopted the House provisions and it is in this form that what is now Rule 16(b) became effective December 1, 1975.

Wright & Miller § 251 History and Policy Considerations, 2 Fed. Prac. & Proc.

Crim. § 251 (4th ed.) (footnotes omitted) (emphasis added). The history of the rule

thus confirms the most straightforward reading of the text: defendants are only

required to sacrifice otherwise confidential and constitutionally-protected

8

information if they choose to trigger the reciprocal obligations of Rule 16. And if they choose not to, those protections remain in place. That was the intentional balance struck by Congress.

Numerous courts have found the government's right to disclosure of defense expert witness information to be conditioned on a defense request and the government's compliance with it.[4] *See, e.g., United States v. Crinel,* No. CR 15-61, 2016 WL 5779778, at *1 (E.D. La. Oct. 4, 2016) ("However, a prerequisite to any obligation of a defendant to provide discovery under Rule 16(b)(1) is that the defendant had requested discovery and the government has complied."); *United States v. Burke,* No. 3:12-CR-318-D, 2015 WL 1931327, at *3 (N.D. Tex. Apr. 29, 2015) ("[The defendants] are permitted to rely, however, on the government's alleged failure to produce discovery within the scope of Rule 16(a)(1)(E) when opposing the government's request for reciprocal discovery under Rule 16(b)(1)(A)."); *United States v. Antoine*, No. CR10-229, 2012 WL 3279207, at *3 (W.D. Pa. Aug. 9, 2012) ("The Defendants sought disclosure pursuant to Fed. R. Crim. P. 16(a)(1)(G) and the Government has complied with this discovery request. Therefore, it is entitled to the requested pretrial, reciprocal discovery from

---

[4] The converse is also true: Courts have found the government has no obligation to provide any expert disclosure if the defense does not request it. *See, e.g., United States v. Johnson,* 228 F.3d 920, 924 (8th Cir. 2000); *United States v. Salerno,* 108 F.3d 730, 743 (7th Cir.1997).

9

the Defendants pursuant to Fed. R. Crim. P. 16(b)(1)(C)(i)."); *United States v. De Leon-Navarro,* No. 10-CR-188A SR, 2012 WL 2254630, at *7 (W.D.N.Y. June 15, 2012) ("Since the defendant has moved pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure for similar materials and information, the government is entitled to reciprocal discovery pursuant to Rule 16(b)(1).").

In short, there is no doubt that any defense pretrial expert witness disclosure obligation is conditional on the defendant's request and the government's compliance with it. The evidentiary rules and the trial court's gatekeeping obligations under *Daubert* and its progeny do not override Rule 16 or change the calculus for disclosure. The pretrial disclosure obligations under Rule 16 are far broader than necessary for the trial court to carry out that responsibility and do not allow for compelled disclosure in a manner that would entirely read out the Rule's text on the conditional nature of the disclosure.

## VI.   REASONS WHY THE WRIT SHOULD ISSUE

A writ is appropriate to correct the district court's first-of-its-kind order compelling the defense to provide pretrial discovery that the government is not entitled to under any rule, statute, or other binding authority. *See, e.g.*, *In re United States*, 834 F.2d 283, 284 (2d Cir. 1987) (issuing writ because district court "misinterpreted [Fed. R. Crim. P. 16, Fed. R. Evid. 801], prior decisions of this

10

Court, and the nature and extent of its inherent authority" to require discovery). This case meets the three criteria for writ relief, as discussed below.

**A.    Mr. Storm Has No Other Adequate Means to Obtain the Relief Sought**

A writ should issue here because the ordered disclosure of confidential defense strategy cannot be remedied from a post-judgment appeal, nor is an interlocutory appeal available. This Court has repeatedly issued writs to prevent the disclosure of confidential information. *See, e.g., In re Roman Catholic Diocese of Albany, New York,* 745 F.3d 30, 33, 35-37 (2d Cir. 2014) (disclosure of potential sexual abuse by priests was harm not adequately remediable after final judgment); *In re The City of New York,* 607 F.3d 923, 934 (2d Cir. 2010) (disclosure of confidential police reports not adequately remediable after final judgment; *In re von Bulow,* 828 F.2d at 98-99 (no other adequate means to remedy revelation of attorney-client privileged communications). As this Court observed in *In re City of New York,* "a remedy after final judgment cannot unsay the confidential information that has been revealed." 607 F.3d at 934 (internal quotation marks omitted).

Here, the pretrial disclosure of expert witness information would reveal confidential defense strategy. The expansiveness of Rule 16's requirements, wrongly imposed by the district court, would give the government a broad insight

11

into what the defense **may** present at trial.  In a case such as this one, where the issues are highly technical, the parties' respective cases depend largely on expert testimony.  Thus, a view into the defense's proposed expert testimony and opinions gives the government a full picture of how the defense plans to defend the case.

Contrary to the district court's comments in her ruling, the decision by the defense not to reveal otherwise confidential information is not "gamesmanship" or "parlor tricks."  (Tr. 24:12-16; 27:12-18.)  Defense strategy is often, as here, carefully and legitimately guarded so as not to give the government an advantage in presenting its case by knowing what the defense will be.[5]  And the danger of compelled disclosure is particularly acute when, as here, it includes opinions of experts the defense **may never call**.

Indeed, the confidentiality of defense strategy is protected by the Sixth Amendment.  *See Weatherford v. Bursey,* 429 U.S. 545, 553-58 (1977) (recognizing Sixth Amendment implications from revelation of confidential defense strategy but finding no Sixth Amendment violation where there was,

---

[5] With that said, the defense was willing to negotiate with the government and provide a more limited disclosure that would not have exposed its defense strategy. (Tr. 19:13-20:6.)  The government and the court, however, declined that invitation and insisted on full simultaneous disclosure regarding potential defense experts, not even permitting the defense to have the benefit, as contemplated by Rule 16, of first having the government's compliance with its disclosure obligation before disclosing all of the possible defense expert witnesses.

among other things, "no communication of defense strategy to the prosecution");

*see also United States v. Chandler,* 56 F.4th 27, 36-40 (2d Cir. 2022), *cert. denied,*

143 S. Ct. 1791 (2023) (recognizing Sixth Amendment issue in revelation of trial

strategy but concluding, on plain error review, that defendant had not established

Sixth Amendment violation where informant was not acting for government and

information regarding trial strategy did not come from attorney).  Where there has

been purposeful invasion and the communication of confidential defense strategy,

courts have found a Sixth Amendment infringement.  *See, e.g., United States v.*

*Danielson,* 325 F.3d 1054, 1066-74 (9th Cir. 2003) (defendant raised valid Sixth

Amendment claim when informant repeatedly conveyed confidential defense trial

strategy, including defendant's decision whether to testify and nature of his

defense, to prosecution).  As the court in *Danielson* observed:

> The Sixth Amendment is meant to assure fairness in the adversary
> criminal process. *United States v. Cronic,* 466 U.S. 648, 656, 104
> S.Ct. 2039, 80 L.Ed.2d 657 (1984).  "The very premise of our
> adversary system of criminal justice is that partisan advocacy on both
> sides of a case will best promote the ultimate objective that the guilty
> be convicted and the innocent go free." *Id.* at 655, 104 S.Ct. 2039
> (quoting *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 45
> L.Ed.2d 593 (1975)).  Because this "very premise" is the foundation
> of the rights secured by the Sixth Amendment, where the Sixth
> Amendment is violated, "a serious risk of injustice infects the trial
> itself." *Id.* at 656, 104 S.Ct. 2039 (quoting *Cuyler v. Sullivan,* 446
> U.S. 335, 343, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

*Id.* at 1066.

13

Relatedly, the revelation of defense strategy infringes on defense counsel's work product protection. "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) (citing Fed. R. Civ. P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *Id.* (citing *United States v. Nobles,* 422 U.S. 225, 238 (1975)). The work product doctrine applies to civil and criminal cases alike. *Nobles*, 422 U.S. at 238 (1975).

Preserving this confidential defense strategy is the precise reason the defense elected ***not*** to request expert witness disclosures from the government, so as not to trigger reciprocal expert witness disclosure obligations from the defense. The district court's order obliterates this strategic decision and will force this confidential information to be disclosed.

An appeal from final judgment is not an adequate remedy for this forced disclosure of defense strategy. Importantly, the defense will be forced to disclose all expert witnesses it ***might*** call at trial and give a detailed summary of testimony they ***might*** give. But often the defense does not end up calling all potential defense witnesses and indeed may elect, after hearing the government's case, not to call any experts, or even any witnesses, at all. For example, the government

14

may not call all of its proposed experts or may narrow the set of issues on which they testify. The defense will frequently tailor its expert evidence to meet what the government presents, as it is entitled to do. That may mean calling fewer or no expert witnesses or narrowing the issues on which they testify. Under the district court's order, Mr. Storm will be forced to disclose to the government far more defense information than he ultimately may use at trial. If Mr. Storm is convicted and prevails on appeal based on the improper disclosure of defense strategy, then on retrial, there would be no way to have a fair trial with no such improper government advantage because the government would already have knowledge of the defense strategy. The bell cannot be unrung.

Because of the inadequacy of appeal from final judgment, numerous courts have issued writs of mandamus to prevent the disclosure of such protected information. *See, e.g., In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1305 (Fed. Cir. 2006) (issuing writ to prevent disclosure of work product protected information); *In re E.E.O.C.*, 207 F. App'x 426, 434-35 (5th Cir. 2006) (issuing writ to prevent disclosure of work product protected information); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) (issuing writ of mandamus to prevent disclosure of work product protected information); *In re Burlington N., Inc.*, 822 F.2d 518, 522-23, 534 (5th Cir. 1987) (conditionally

15

issuing writ to prevent disclosure of potentially privileged information, including under the work product privilege).

Nor is an interlocutory appeal an available option here. This Court has jurisdiction over "final decisions of the district courts." 28 U.S.C. § 1291. This jurisdictional limitation typically prohibits appellate review in criminal cases "until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984) (citing *Berman v. United States,* 302 U.S. 211, 212 (1937)). There is a "narrow" exception to this final judgment rule under the collateral order exception. *United States v. Maxwell,* 832 F. App'x 21, 22 (2d Cir. 2020). The conditions for the collateral order exception have been described as "*stringent*" and in most criminal cases, the exception has been interpreted with the "*utmost strictness.*" *Id.* (first quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867-68 (1994), then *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)) (emphasis in original). To fall within the collateral order exception, the decision must: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id*. (citing *United States v. Punn*, 737 F.3d 1, 5 (2d Cir. 2013)) (internal quotation marks omitted).

This Court recently declined to review a denial of a motion to modify a protective order in a criminal case on account of the appeal not coming within the

16

collateral order exception. *Maxwell*, 832 F. App'x at 22. Recognizing that the Supreme Court has only identified four circumstances where criminal cases have come within this exception, the court declined to exercise jurisdiction where it had none and dismissed the appeal for lack of jurisdiction. *Id*. at 22-23 (collecting cases) (describing the criminal cases that the Supreme Court has recognized under this exception as "motions to dismiss invoking double jeopardy, motions to reduce bail, motions to dismiss under the Speech or Debate Clause, and the forced administration of antipsychotic medication"). There is no recognized application of the collateral order doctrine to review criminal pretrial discovery orders. *Id.*

### B. Mr. Storm Has a Clear and Indisputable Right to a Writ

The district court committed a clear and indisputable error in ordering pretrial disclosure of defense expert witnesses in the absence of a request for government expert witness disclosures. A writ overturning a district court's ruling can issue where a district court has abused its discretion by basing "'its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence,' or if it has 'rendered a decision that cannot be located within the range of permissible decisions.'" *Rajaratnam*, 622 F.3d at 171 (citing *In re Sims,* 534 F.3d 117, 132 (2d Cir.2008)). Here, the district court indisputably had no authority to contravene or contradict the provisions of Fed. R. Crim. P. 16, and Rule 16 clearly provides for pretrial disclosures of defense expert witness information ***only if*** the

17

defendant requests the same disclosures from the government **and** the government complies.

The district court's view, if adopted, would read out of Rule 16 a fundamental piece of text and upset a carefully calibrated balance struck by Congress.

### 1. Supreme Court Case Law Makes Clear that the District Court Had No Authority to Contravene Rule 16

The district court invoked its authority under Fed. R. Crim. P. 57(b) and its "inherent authority" to support its order of pretrial expert witness disclosures. The Supreme Court has made clear, however, that neither source of authority permits a district court to contravene or contradict statutes or rules. *See Carlisle v. United States,* 517 U.S. 416, 425-28 (1996). Rule 57(b) provides in relevant part:

> **(b) Procedure When There Is No Controlling Law.** A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.

As the Court explained in *Carlisle,* a district court exceeds its authority under Rule 57(b) when it makes an order that is "not consistent" with an express provision of a Federal Rule of Criminal Procedure. *See Carlisle,* 517 U.S. at 425 (court had no authority under Rule 57(b) to excuse untimely filing of Rule 29 motion because it was not consistent with Rule's express provision of a 7-day time limit).

18

A district court's "inherent authority" is subject to the same constraint. *Id.* at 426 ("Whatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure."); *Dietz v. Bouldin,* 579 U.S. 40, 45 (2016) ("the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute"); *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254 (1988) ("a federal court may not invoke supervisory power to circumvent the … Federal Rule[s] of Criminal Procedure"). As the Court explained in *Bank of Nova Scotia*:

> In the exercise of its supervisory authority, a federal court "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Nevertheless, it is well established that "[e]ven a sensible and efficient use of the supervisory power ... is invalid if it conflicts with constitutional or statutory provisions." *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471–472, 88 L.Ed.2d 435 (1985). To allow otherwise "would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *United States v. Payner,* 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980).

487 U.S. at 254. The Court went on to explain that the Federal Rules of Criminal Procedure, which are promulgated by the Supreme Court and adopted by Congress, are "in every pertinent respect, as binding as any statute duly enacted by Congress,

19

and federal courts have no more discretion to disregard the Rule[s'] mandate than they do to disregard constitutional or statutory provisions." *Id.* at 255.[6]

Under the principles articulated by the Supreme Court, the district court was without authority to order pretrial disclosure of defense expert witness information. Rule 16 expressly provides a procedure for the possible exchange of expert witness disclosure, and the disclosure of defense expert witness information is expressly conditioned on a reciprocal request for government expert witness disclosures and the government's compliance therewith.

>   **2.** **Second Circuit Precedent Also Clearly Limits the District Court's Authority to Contravene Federal Discovery Rules and Laws**

This Court has previously issued a writ of mandamus to overturn a district court's order requiring pretrial disclosures that were not consistent with Rule 16 or the Jencks Act. In *In re United States,* 834 F.2d at 284, the district court ordered, ostensibly under Rule 16, Federal Rule of Evidence 801, and its "inherent

---

[6] The district court's reliance on the Federal Rules of Evidence is equally misplaced. Nothing in Rule 104, 702, or any other of the Rules of Evidence gives the court pretrial discovery authority. At most, those rules establish that the Court should exercise a "gatekeeping" function as to the admissibility of evidence, but nothing in those rules requires that such a function be exercised prior to trial. Nor does anything in the Federal Rules of Evidence suggest that they somehow "trump" the Federal Rules of Criminal Procedure.

authority," that the government disclose in advance of trial co-conspirator statements reflecting admissions by the defendant. This Court granted a writ of mandamus reversing the district court's order. As the Court explained, Rule 16 does not require disclosure of such co-conspirator statements; instead, the Jencks Act controls disclosure of co-conspirator statements and it does not require pretrial disclosure. *Id.* at 284-87. The Court concluded that "as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act." *Id.* at 287; *cf. also U.S. v. Fei Ye,* 436 F.3d 1117 (9th Cir. 2006) (ordering mandamus relief where district court committed "clear error" in ordering depositions of government witnesses when such depositions were not authorized by Rule 15). Similarly here, the district court had no authority to order pretrial disclosures contrary to Rule 16.

### 3. Other District Courts Have Concluded They Lack Authority to Order Pretrial Disclosure of Defense Expert Witnesses in the Absence of a Triggering Request

As far as the defense is aware, no circuit courts have directly addressed whether a district court has the inherent authority to contravene Rule 16 by ordering pretrial expert witness disclosure in the absence of a reciprocal demand and compliance. However, numerous district courts have acknowledged that

21

pretrial expert disclosures are only triggered when the defendant requests the government to disclose their experts and that they therefore lack authority to order pretrial disclosure in the absence of such a triggering request. *See, e.g.*, *United States v. Thompson*, No. CR19-159-RSL, 2022 WL 841133, at *1-2 (W.D. Wash. Mar. 21, 2022); *United States v. Harwin*, No. 2:20-CV-115-JLB-MRM, 2021 WL 5707579, at *2 (M.D. Fla. Oct. 29, 2021); *United States v. Penn*, No. 20-CV-00152-PAB, 2021 WL 4868439, at *1 (D. Colo. Oct. 19, 2021); *United States v. Dailey*, 155 F.R.D. 18, 21 (D.R.I. 1994).

In *Harwin,* the government sought a pretrial review of the defendant's expert because, much like the government argued here, it would "be difficult and time consuming to qualify an economic expert in the middle of trial outside the presence of the jury" and that it "is better done prior to trial." 2021 WL 5707579, at *2 (internal quotations omitted). The court denied the request because the court's "gatekeeping function" under *Daubert* did not justify requiring the defendant to disclose his expert witnesses and their testimony before trial in contravention of Rule 16. *Id.* The *Harwin* court explained:

> As other courts have noted, if Congress believed that "disclosures as to expert witnesses creates a unique situation that mandates providing the government with such information," Congress "could have easily carved out an exception in Rule 16 as to expert[s]." (Doc. 114-1 at 3.) Even more, there are constitutional implications to compelling such criminal discovery. *See, e.g.*, *Wardius v. Oregon*, 412 U.S. 470 (1973); *United States v. Bump*, 605 F.2d 548, 552 (10th Cir. 1979)

22

(finding disclosures pursuant to Rule 16(b) constitutional in part because "the prosecutor's right of discovery arises only after the defendant seeks discovery of similar evidence from the government").

*Id.*

In *Thompson*, the court rejected the government's argument that Rule 16 "controls as to the scope of defendant's pretrial discovery obligations" but "does not control the Court's discretion to manage trial procedures or exercise its expert witness gatekeeping function under Fed. R. Evid. 702, *Daubert* [...], and *Kumho*." *Thompson*, 2022 WL 841133 at *1. Instead, the court held, "Fed. R. Crim. P. 16 is controlling law setting forth pretrial discovery *procedure*. It sets forth not only the content of discovery, but the conditions under which it must be disclosed." *Id.* at *2 (emphasis in original).

In *Dailey*, the defendant challenged a uniform discovery order which made pretrial disclosures pursuant to Rule 16 automatic, including expert disclosures, without first triggering reciprocal discovery obligations. The district court held that the court lacked authority for the order under Rule 57(b):

> Rule 16 clearly provides the procedure for pretrial discovery in criminal cases. Thus, any local rule may not be inconsistent with Rule 16. Because the Standard Order is inconsistent with Rule 16, this court has no authority to require Mr. Dailey to provide discovery in any manner other than that described in Rule 16.

*Id.* The court also rejected the government's arguments that the court has an inherent authority to: 1) "regulate discovery and manage its calendar" by

23

authorizing pretrial discovery not specifically provided for under Rule 16; and

2) "order and supervise discovery in a criminal case above and beyond any of the

mentioned rules." *Id.* (quoting *United States v. Williams,* 792 F. Supp. 1120, 1123

(S.D. Ind. 1992)). As to the first argument, the district court said "'there is no

authority for the proposition that a court has inherent authority to compel a

defendant to provide pretrial discovery which is not specifically authorized in Rule

16'" and that it "logically follows that there cannot be any inherent authority to

adopt a local rule or Standard Order which contradicts Rule 16." *Id.* (quoting

*United States v. Layton,* 90 F.R.D. 520, 523 (N.D. Cal. 1981)). As to the second

argument, the district court rejected the claim that the automatic Rule 16

disclosures simply went above and beyond Rule 16 or other express rules, but

rather found them "*in contradiction of* Rule 16." *Id*. (emphasis in original).

The defense is aware of no other district court decision ordering, as the

district court did here, the pretrial disclosure of defense expert witness information

in the absence of a triggering defense request and government compliance. The

only decision cited by the government in support of its position was *United States

v. Impastato*, 535 F. Supp. 2d 732 (E.D. La. 2008). Yet even that decision does not

actually support the pretrial disclosure that was ordered here. The *Impastato* court

did not order the defendant to disclose its experts to the government; it ordered the

defendant to submit the identity and subject matter of any potential expert

24

witnesses *in camera*, after which the court would order reciprocal discovery *only if* it found that "the witness's testimony [was] of such nature that immediate disclosure to the [g]overnment [was] warranted in order to facilitate the efficient operation of the trial." *Impastato*, 535 F. Supp. 2d. at 743-44. The *Impastato* court, in fact, first recognized that "only [the Federal Rules of Criminal Procedure] can impose the duty of disclosure on defendants, regardless of the authority of the judge." *Id.* at 743. Further, the *Impastato* court recognized that any procedure it adopted "must be crafted in a way that respects the fact that the [d]efendant has no obligation to present a defense until the [g]overnment has established its case." *Impastato*, 535 F. Supp. 2d at 743.[7]

The district court here, in ordering pretrial defense expert witness disclosures without even the protection of *in camera* review, went further than any other court has gone. The court's order is in direct contravention of Rule 16 and Supreme Court and circuit case law. The right to a writ here is thus clear and indisputable.

---

[7] Mr. Storm identified one other case in which a district court ordered *in camera* review of defense expert reports. *See United States v. Nacchio*, 555 F.3d 1234, 1238 n.2 (10th Cir. 2009) (McConnel, J. dissenting) (citing *United States v. Poulsen,* No. 06–129 (S.D.Ohio September 28, 2007), where defendants were ordered to submit expert reports *in camera* to prevent the government from getting "an unjustified preview of Defendant's litigation strategy").

25

### C. The Writ Is Appropriate Under the Circumstances

Finally, writ review is appropriate in this case, given the novelty and significance of the issue presented, its inability to be adequately remedied by other means, and the fact that a writ would aid in the administration of justice. In *United States v. Coppa,* 267 F.3d 132, 137-38 (2001), this Court stated, "we will entertain a petition for a writ of mandamus—which, as we have often noted, is an extraordinary remedy—to cure a defective pretrial discovery order if the petitioner demonstrates '(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice.'" Although writs are rarely used to overturn discovery rulings, the district court's order is of extraordinary significance that will reach many criminal defendants beyond this case. *See e.g., Rajaratnam*, 622 F.3d at 170 (explaining the appropriateness of issuing a writ where privacy rights carrying "constitutional overtones" were implicated.)

The issue presented here is novel. While the Supreme Court and this Court have made clear that district courts have no authority to contravene the Federal Rules of Criminal Procedure, they have not spoken directly to the issue of pretrial discovery orders that compel defendants to provide discovery beyond that required by Rule 16. Only district courts have addressed this issue, and while they have overwhelmingly found no authority to contravene Rule 16 on the issue of defense

26

expert witness disclosures, they are – obviously – not binding on other district courts.

The issue has also become more acute and has been arising more frequently because of the 2022 amendments to Rule 16. While those amendments did not change the conditional and reciprocal nature of expert disclosures, they do require more fulsome disclosures than had previously been required in criminal cases. The Rule now requires, among other things, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). These onerous requirements reveal more defense strategy than under the prior versions of the Rule, and for this reason, the government is making new challenges to the conditional nature of the rule and can be expected to continue to do so until this Court addresses the issue.

The issue is also legally significant. As discussed above, the issue of the scope of a district court's authority is one the Supreme Court has repeatedly taken up. As the Supreme Court has made clear, neither a district court's authority under Rule 57(b) nor its inherent authority authorizes the court to contravene legislative enactments. The district court's order here is directly at odds with the considered judgments of both the Supreme Court and Congress in enacting Rule 16. This

27

Court should intervene swiftly to correct the district court's judicial usurpation of legislative authority.

Further, as discussed above, there are no other adequate means to remedy the district court's error here, as interlocutory appeal is unavailable and review from final judgment cannot remedy the improper disclosure of defense strategy.

Finally, resolution of this issue will aid in the administration of justice. "Mandamus is appropriate 'when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice.'" *In re von Bulow,* 828 F.2d at 99. The government indicated in its letter brief that it was regularly engaging in the practice of demanding pretrial expert witness disclosures. While it is unclear whether the government has yet succeeded in obtaining such disclosures in the absence of the requisite defense request and government compliance, it is clear that the district court's order in this case will empower the government to seek pretrial disclosures from other defendants who, like Mr. Storm, do not make the triggering request. And it is likely that other judges will follow this district court's lead in improperly ordering such pretrial disclosures, especially as the court specifically acknowledged discussing the issue with her colleagues. This Court should step in now to provide clarity and prevent errors that cannot be adequately cured on appeal.

28

## VII. CONCLUSION

For all the foregoing reasons, this Court should issue a writ of mandamus ordering the district court to vacate its order compelling the pretrial disclosure of defense expert witness information.

DATED: October 16, 2024                HECKER FINK LLP

By: _____
DAVID E. PATTON
*Attorneys for Roman Storm*

## CERTIFICATE OF COMPLIANCE

This Petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d) because it contains 6,778 words, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 16, 2024

*/s/ David Patton*
David Patton
*Attorney for Roman Storm*

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38ᵗʰ Floor*
*New York, New York 10278*

September 18, 2024

**BY ECF & EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:    ***United States v. Roman Storm***
> **23 Cr. 430 (KPF)**

Dear Judge Failla:

The Government respectfully submits this letter motion, pursuant to Federal Rules of Criminal Procedure 16.1 and 57(b), Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, requesting that the Court:

- Schedule a *Daubert* hearing no later than two weeks prior to the December 2, 2024 trial date, and order the parties to produce expert disclosures substantively consistent with the notice required by Federal Rules of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C) sufficiently in advance of the *Daubert* hearing to allow the parties to file any challenges to the proposed expert testimony in advance of the hearing; and

- Order the defendant to provide the Government with notice of his intention to assert an advice-of-counsel defense and attendant disclosures, including (a) the nature and specifics of his advice-of-counsel defense, (b) the identification of the attorney(s) who provided such advice and a proffer of facts in support of such a defense, and (c) all documents that he intends to rely on in support of such a defense, as well as any other documents relating to such a defense, by October 14, 2024.

Since the Court's issuance of a revised scheduling order on July 15, 2024 (Dkt. 67), and pursuant to their obligations under Rule 16.1, the parties have had multiple discussions attempting to negotiate an agreed-upon schedule for these and other pretrial disclosures that the parties could jointly propose to the Court. In the Government's experience, it is the uniform practice in this District for the parties to a criminal trial to agree to a schedule for pretrial expert disclosures. Such disclosures allow the parties to prepare for trial and also to raise any *Daubert* challenges in advance of trial, so that the Court can address these issues without having to interrupt the trial after the jury

has been sworn. However, in this case, the defense has taken the position that as long as it does not ask for pretrial expert disclosures from the Government, there will be no such disclosures until each expert witness is called at trial. That is a recipe for chaos. It will necessitate a continuance in the midst of trial every time an expert witness is called, so that the parties and the Court can address any *Daubert* issues raised by that expert.

While Rule 16 provides one mechanism for ordering expert disclosure, this Court also has substantial discretion to structure the trial proceedings in a manner that enables it to exercise its gatekeeping function under *Daubert*. The Government is respectfully requesting that the Court exercise that discretion by ordering a single *Daubert* hearing to take place no less than two weeks in advance of trial rather than allowing for the possibility of multiple *Daubert* hearings during the trial, and to order the parties to make disclosures sufficiently in advance of the *Daubert* hearing to allow the parties to make any objections for the Court to resolve at the hearing. This proposed procedure will ensure that the trial is conducted with minimal interruptions and will minimize the risk that improper expert testimony is admitted at trial. Moreover, ordering disclosures sufficiently in advance of the *Daubert* hearing will be more efficient for the Court and the parties as it will afford the parties sufficient time to properly scrutinize and vet the expert disclosures so that they can raise any and all applicable challenges with the Court sufficiently in advance of trial. Particularly in a case such as this one that is likely to involve relatively complex expert testimony, this Court should exercise its discretion to ensure that the parties have sufficient time to litigate these issues and to ensure that the Court is provided with sufficient time to decide such issues based on fulsome briefing and a *Daubert* hearing.

During the parties' most recent discussion of this issue on September 17, 2024, the defense informed the Government that it does not want to receive or produce any pretrial expert disclosures that provide the degree of notice set forth in Rule 16, and that it will not agree to a deadline to disclose whether the defendant will assert an advice-of-counsel defense without agreement on the schedule for other pretrial disclosures. The Government's view is that the defense's position would seriously undermine the Court's ability to conduct a fair and efficient trial. Accordingly, the parties are at an impasse.[1]

## I.    Expert Disclosures

### a.    Relevant Law

As the Court well knows, pursuant to Federal Rule of Criminal Procedure 16, at the defendant's request, the Government must disclose to the defendant, among other things, "a complete statement of all opinions that the government will elicit from the [expert] witness in its

---

[1] In these discussions, the Government has also indicated that it is willing to agree to early production of 3500 material as part of an overall agreement on pretrial disclosures, despite the fact that it has no legal obligation to do so. *See, e.g., United States v. Bakhtiar*, 994 F.2d 970, 974, n. 4 (2d Cir. 1993) ("Essentially § 3500 bars discovery until the witness has testified on direct examination in the case, and limits discovery of such statements to material relating to the subject matter of the testimony; it operates as a limitation on the general discovery rules set forth in Fed. R. Crim. P. 16.").

case-in-chief." Fed. R. Crim. P. 16(a)(1)(G)(i), (iii). If the defendant requests expert disclosures from the Government, Rule 16 obliges the Court to "set a time for the government to make its disclosures…[that is] sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii). Rule 16(b)(1)(C) imposes reciprocal obligations on the defendant—including with respect to timing—for any expert witnesses whom he may call at trial, provided that the Government has requested such disclosures and the defendant has made the initial request for the Government's expert disclosures under Rule 16(a)(1)(G).

Rule 16's expert disclosure provisions were amended in 2022 to "address[] two shortcomings of the prior provisions on expert witness disclosure: the lack of adequate specificity regarding what information must be disclosed, and the lack of an enforceable deadline for disclosure." Fed. R. Crim P. 16, Notes of Advisory Committee on Rules—2022 Amendment. Among other things, the Advisory Committee noted that the amendments to Rule 16 were "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id*. The Advisory Committee has made plain since at least 1974 that the intent behind Rule 16's expert disclosure provisions is to "minimize[] the undesirable effect of surprise at the trial….that often results from unexpected expert testimony[,]…[to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed R. Crim. P. 16, Notes of Advisory Committee on Rules—1974 and 1993 Amendments.

*Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which govern the admissibility of expert testimony, also apply squarely here. Those cases and their progeny prescribe the Court's gatekeeping power under Federal Rule of Evidence Rule 702 with respect to expert testimony. *See, e.g., United States v. Ulbricht*, 858 F.3d 71, 114-18 (2d Cir. 2017). Expert testimony can be admitted under Rule 702 only if (1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert is qualified by "knowledge, skill, experience, training, or education"; (3) "the testimony is based upon sufficient facts or data"; (4) "the testimony is the product of reliable principles and methods"; and (5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597 (holding that Rule 702 requires trial judges to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); *Kumho*, 526 U.S. at 147-49 (applying *Daubert* to non-scientific testimony).

A court evaluating proffered testimony under *Daubert* and *Kumho* must look beyond "bare qualifications" and an expert's conclusions to the facts, reasoning, and methodology behind those conclusions. The proponent of an expert "has the burden of establishing that [these] admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, 2000 Advisory Committee Notes (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). Further, in *Kumho*, the Supreme Court made clear that a judge has "considerable leeway" in evaluating the admissibility of expert testimony. *Kumho*, 526 U.S. at 152. Importantly, this discretion includes the authority both to decide "***how*** to test an expert's reliability," *id.*, and to decide "***whether or when*** special briefing or other proceedings are needed to investigate reliability." *Id.* (emphasis added).

The district court's power to order special briefing and proceedings, and to set the schedule for these proceedings, in connection with evaluating the admissibility of expert testimony accords with the authority vested by Federal Rule of Criminal Procedure 57(b), which empowers courts to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district," as well as Federal Rule of Evidence 102, which mandates that the Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." In applying these principles, the Second Circuit has emphasized that a trial court in a criminal case has "broad" discretion both in its "decision to admit expert testimony and the method by which the court reaches that decision." *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020).

### b. Discussion

The Court should not countenance the defendant's gamesmanship and transparent efforts to conduct this trial by ambush, which will result in unnecessary and potentially substantial mid-trial delays. His reading of Rule 16 turns the purpose of the rule and Federal Rule of Evidence 702 on their heads. It is especially untenable in a case such as this, which involves sophisticated tracing of cryptocurrency transactions and analysis of the complex array of websites, computer programs, service providers, and smart contracts that makes up the Tornado Cash service. Both parties are almost certain to call multiple expert witnesses at trial.

As noted above, the defendant has pointedly declined to request expert disclosures from the Government under Rule 16(a)(1)(G) so as not to trigger his own reciprocal obligations under Rule 16(b)(1)(C). In discussions with the Government, the defense has argued that Rule 16's disclosure obligations are too onerous because they force the defense to prematurely disclose its strategy.[2] But the implications of that position would cause serious challenges to the administration of criminal trials. Essentially, the defendant is proposing to waste the Court and the jury's time by forcing the Court to do the analysis necessary to assess the admissibility of the parties' experts mid-trial. Given the sophistication and complexity of the anticipated expert testimony in this case, that analysis will be challenging to do on an abbreviated timeline, mid-trial. Indeed, the defendant's trial-by-surprise strategy suggests that he is hoping to limit the amount of time the Government and the Court have to evaluate his proposed "experts," so he can get otherwise improper expert testimony into the record without a full and fair airing of the propriety of that testimony. As this Court is likely aware, it is a regular practice of both the Government and the defense to provide the opposing party's expert disclosures to their own experts for the purpose of evaluating the adequacy of the disclosures, the proposed methodology, and whether the expert has applied the principles and methodology in a reliable fashion, among other things. This process of having other experts scrutinize the opponent's proposed expert testimony allows both the

---

[2] The defendant has expressed willingness to make minimal disclosures under the pre-2022 version of Rule 16, which required the parties to, among other things, exchange "written summar[ies]," rather than "complete statement[s]," of any expert testimony intended to be offered at trial. The Government rejected this proposal in light of the obvious concerns animating the 2022 amendments to Rule 16 about improving trial efficiency and minimizing surprise by giving both sides a full and fair opportunity to assess and challenge expert testimony well ahead of trial.

Government and the defense to identify potential deficiencies in the proposed expert testimony and, at bottom, allows the Court to decide complex expert issues based on better, more nuanced, and more sophisticated advocacy. It would be quite difficult to engage in such a process, however, if expert disclosures are being made mid-trial.

As the Advisory Committee's notes make plain, Rule 16 was not amended to encourage gamesmanship or to avoid the need to provide the opposing party with notice of proposed expert testimony. Rather, it was amended to facilitate trial preparation, to ensure that challenges to expert testimony can be aired and dealt with well ahead of time to ensure a smooth and efficient trial. This is a crucial part of the Court's ability to properly conduct its gatekeeping function under *Daubert* and its progeny. *See, e.g., Ulbricht*, 858 F.3d at 114-18.

The Government's concerns are not hypothetical. In the recent trial in *United States v. Eisenberg*, No. 23 Cr. 10 (AS), another case involving cryptocurrency for which defense counsel in this case also served as defense counsel, the defense attempted to introduce multiple categories of expert testimony that went beyond its pretrial disclosures. Judge Subramanian was forced to conduct a *Daubert* hearing in the midst of trial, expressing frustration that this resulted in "burning jury time." *See United States v. Eisenberg*, No. 23 Cr. 10 (AS), Apr. 15, 2024 Trial Tr. (attached hereto as Exhibit A), at 975. After hearing extensive testimony from a proposed defense expert outside the presence of the jury, Judge Subramanian excluded some of the proposed expert opinions on the ground that the defense had committed a "plain violation of Rule 16," and that its disclosures had been "woefully deficient." *Id.* at 994-95. The court also substantially limited other areas of the proposed expert testimony, and again noted the "woefully deficient" nature of the defense expert disclosure. *Id.* at 1025-29.[3] The next day, during redirect of the same expert, the court had to interrupt the testimony to conduct a second *Daubert* hearing, which resulted in the preclusion of additional expert testimony that the defense was attempting to elicit on redirect. *Eisenberg*, No. 23 Cr. 10 (AS), Apr. 16, 2024 Trial Tr. (attached hereto as Exhibit B), at 1242-43.

Upon the conclusion of the *Eisenberg* trial, defense counsel first informed the Government that it did not want to engage in any expert disclosures in this case.

Defense counsel in this case also sought to avoid expert disclosures in *United States v. Thompson*, No. CR19-159-RSL, 2022 WL 841133 (W.D. Wash. Mar. 21, 2022), in which the court ruled in the defense's favor. The Government respectfully disagrees with the *Thompson* court's reasoning and circumscribed view of its own powers. And, of course, *Thompson* is not binding on this Court.

At least one other district court has recognized that it retains "some discretion" under *Daubert* to order expert disclosures in advance of trial even if the defense does not make any requests under Rule 16. *United States v. Impastato*, 535 F.Supp.2d 732, 742 (E.D. La. 2008). The Government submits that the reasoning in *Impastato* is more persuasive than the reasoning in *Thompson*, and is more in line with the purposes of the Federal Rules of Criminal Procedure and

---

[3] Judge Subramanian also noted that it would have been better—and would have resulted in less delay of the trial—if the Government had "insist[ed] on a more fulsome disclosure at the outset." *Id.* at 1029-30. The Government is mindful of that admonition in making this motion in this case.

the Federal Rules of Evidence, as interpreted in *Daubert* and *Kumho Tire*. As the district court in *Impastato* recognized, the trial court has discretion to decide "***how*** to test an expert's reliability," and "***whether or when*** special briefing or other proceedings are needed to investigate reliability." *Kumho*, 526 U.S. at 152 (emphasis added); *see also Jones*, 965 F.3d at 161.

In *Impastato*, the court ordered the defense to make its disclosures first to the court in advance of trial, and stated that it would turn the disclosures over to the government if the expert "testimony is of such nature that immediate disclosure to the Government is warranted in order to facilitate the efficient operation of the trial." *Id.* at 744. In this case, given the obvious complexity of the issues at trial, the Government submits that there is no need for the Court to conduct an *ex parte* review before ordering disclosure to the Government. The proposed schedule for disclosures and a pretrial *Daubert* hearing two weeks prior to trial will ensure that the parties can fairly prepare for trial on an equal footing and prevent gamesmanship. *Cf. United States v. Tin Yat Chin,* 476 F.3d 144, 146 (2d Cir. 2007) (chastising Government for engaging in "sharp practice" for not making pretrial disclosures with respect to rebuttal expert testimony until one day before end of defense case because then-current version of Rule 16(a)(1)(G) only required pretrial disclosures with respect to expert testimony to be introduced in Government's case-in-chief).

In sum, consistent with its discretion and its gatekeeping function, Federal Rule of Criminal Procedure 57(b), and Federal Rule of Evidence 702, this Court should schedule a pretrial *Daubert* hearing and order the parties to make expert disclosures in advance of the hearing.

## II. Advice-Of-Counsel Defense

### a. Relevant Law

In a criminal case where the defendant's intent is at issue, "the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true," but rather "is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). "That said, defendants are entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense." *Scully*, 877 F.3d at 476 (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). Specifically, "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *Id.* (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).

Where the defendant has not put forward a formal defense of reliance on advice of counsel, courts have limited the admission of evidence about the involvement of attorneys on relevancy grounds and pursuant to Rule 403. The decision in *S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), illustrates the limited relevance of evidence of attorney involvement absent a showing of each of the elements of the advice-of-counsel defense. In that case, which was brought against a Goldman Sachs employee alleged to have violated securities laws in the offer and sale of a synthetic collateralized debt obligation, the defendant disclaimed any advice-of-counsel defense,

but sought to introduce evidence that in-house counsel had reviewed various documents, reviewed disclosure language, was copied on communications, and in some instances assisted in drafting documents. *Id.* at 682-83. The court, however, held that Rules 401 and 403 precluded evidence and references to counsel, explaining:

> a lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as 'blessing' the sufficiency of that disclosure. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.

*Id.* at 684. Accordingly, in *Tourre*, the court precluded as irrelevant and prejudicial (1) evidence used solely to show lawyers attended or set up meetings, (2) evidence that lawyers approved of certain documents or disclosures, and (3) the placing by the defendant of undue focus on the fact that a lawyer was present at meetings or reviewed documents or disclosures. *Id.* at 685. Although the defendant was allowed to present evidence of the attendees of meetings and to include professional descriptions for those participants, defense counsel could not mention the presence of lawyers in their opening statements or arguments. The court emphasized that this was not an inclusive list of inadmissible references to counsel and that other references may similarly be inadmissible. *Id.*

Similarly, in *S.E.C. v. Stoker*, another civil securities fraud action in which the defendant did not intend to assert an advice-of-counsel defense, but rather sought to elicit testimony about whether lawyers had reviewed certain transactions, Judge Rakoff took issue with defense counsel's efforts to highlight, through questioning, the fact that attorneys had reviewed certain offering materials. No. 11 Civ. 7388 (S.D.N.Y. July 23, 2012), Trial Tr. at 895-96. The court recognized that "absent evidence that counsel knew either the information that Mr. Stoker allegedly kept secret, at least from outsiders, or knew the information that the SEC claims were distorted misrepresentations, the role of counsel in any of this [was] totally irrelevant." *Id.* And, although the defendant proffered an alternative reason for the questioning, the court recognized that counsel's tactic was a "disguised reliance argument," *id.* at 973, and that, even if the testimony were offered for some other purpose, questioning about the role of attorneys invited "all the dangers of the jury misunderstanding the alleged purpose" of the testimony. *Id.* at 981. Similarly, in *S.E.C. v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019), Judge Cote precluded "references to counsel's communications" because, among other things, they were "not relevant in the absence of an advice-of-counsel defense." The court explained that "any probative value of such references is substantially outweighed" by, among other things, "the risk that such references will sow confusion and mislead the jury by suggesting that counsel … fully informed … approved" a transaction. *Id.*

Thus, where a defendant seeks to admit evidence of the involvement of attorneys, whether as a formal advice of counsel defense, or to show good faith, he must provide the Government with sufficient notice and disclosures ahead of trial. Ordering such disclosures is routine in this district. *See, e.g., United States v. Schulte*, No. 17 Cr. 548 (PAC), 2020 WL 133620, at *6

(S.D.N.Y. Jan. 13, 2020) (requiring advanced advice of counsel disclosure); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (defendant should have made pertinent disclosures in advance of trial); *United States v. Rubin/Chambers, Dunhill,* 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (requiring notification to the Government of advice-of-counsel defense sufficiently before pre-trial conference to permit litigation over disputes). Such pretrial notice and disclosure are necessary to assess the relevance and admissibility of evidence and the permissibility of argument and to prevent confusing and unfairly prejudicial arguments from being presented to the jury.

### b. Discussion

As noted above, the defendant has refused to disclose whether he even intends to assert an advice-of-counsel defense, much less produce any materials relevant to that defense, until the parties can agree on a "holistic" pretrial schedule. For the following reasons, the Court should set a deadline of October 14, 2024, for the defendant to provide notice if he intends to assert an advice-of-counsel defense and to produce any materials relevant to that defense.

First, additional disclosure is necessary to determine whether the evidence the defendant hopes to elicit or offer will be relevant and not confusing or prejudicial. Regardless of whether the defendant intends to argue a "formal" advice of counsel defense, he will need to establish the relevance of evidence relating to any attorneys' involvement in the development of the Tornado Cash service. *See Tourre*, 950 F. Supp. 2d at 684.

Second, notice and discovery are necessary because by invoking an advice-of-counsel and/or good-faith defense, the defendant typically impliedly waives the privilege. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Pretrial notice is therefore necessary to conduct discovery into otherwise potentially privileged areas. A defendant's "conversations with counsel regarding the legality of his schemes" are "directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* Because conversations with counsel can reveal an absence of good faith or advice of counsel, "the attorney-client privilege cannot at once be used as a shield and a sword." *Id.* In other words, to assess whether a defendant truly acted in good faith, it becomes necessary to understand his communications with his attorney: did he fully and honestly lay out all the facts, did the attorney provide him information that would leave him to believe he was not acting lawfully, did he in good faith and honestly follow counsel's advice? For that reason, once a defendant raises a good faith or advice of counsel defense, "any communications or evidence defendants intend to use to establish the defense are subject to disclosure" as are "otherwise privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018). In addition, in this case the attorney-client privilege may be controlled by a corporation (here, Peppersec). As a result, the Court may need to resolve whether the defendant can rely on evidence that is protected by a company's privilege. *See United States v. Milton*, 626 F. Supp. 3d 694, 702-03 (S.D.N.Y. 2022) (denying the defendant's constitutional claim that "privileged communications become discoverable simply because a defendant wishes to use those communications in his defense"). Pretrial resolution of that waiver issue is important here because it appears that the issue may implicate not only the defendant's privilege, but also Peppersec's, and therefore may require collateral litigation as to who may waive the privilege and

to what materials the Government is entitled. This additional complication underscores why a short deadline for assertion of any advice-of-counsel defense, and corresponding disclosures, is necessary.

Third, pretrial notice and disclosure are in the interest of the efficient administration of the trial and to ensure that there are no delays mid-trial. *See Schulte*, 2020 WL 133620, at *6; *Scali*, 2018 WL 461441, at *8; *Rubin/Chambers, Dunhill*, 828 F. Supp. 2d at 711.

Applying this reasoning, Judge Kaplan recently ordered similar pretrial disclosures in *United States v. Bankman-Fried*, 22 Cr. 673 (LAK). There, the Court initially ordered the defense to provide notice of its intention to present an advice-of-counsel defense approximately two months before trial. *Id*. Dkt. 173 (July 30, 2023). Initially, the defense provided a bare-bones statement that it merely intended to assert such a defense, without further elaboration. At that point, the Government moved for and the Court ordered more detailed disclosures, including "the contours of the defense," the identity of the "attorney(s) involved, the general subject matter of the communications …, the format of the communications (e.g., written or oral), the approximate dates or date range of the relevant communications," the identity of "any other individuals present for or involved in the communications," and also to disclose any "materials supporting the defense(s), as well as any materials in the defendant's possession that would tend to undermine or impeach the defense(s)." *Id*. Dkt. 248 (Sept. 5, 2023). The Government submits that similar disclosures are appropriate here.

## III.    Conclusion

For all of the foregoing reasons, the Government respectfully requests that the Court order the following reasonably in advance of trial: (1) a *Daubert* hearing and pre-hearing disclosures substantively consistent with the notice required by Federal Rules of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C) for any experts to be called at trial; and (2) notice of the defendant's intention to assert an advice-of-counsel defense and attendant disclosures by October 14, 2024, including (a) the nature and specifics of his advice-of-counsel defense, (b) the identification of the attorney(s) who provided such advice and a proffer of facts in support of such a defense, and (c)

all documents that he intends to rely on in support of such a defense, as well as any other documents relating to such a defense.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____
Benjamin A. Gianforti
Thane Rehn
Ben Arad
Assistant United States Attorneys
(212) 637-2490
(212) 637-2354
(914) 993-1907

Kevin Mosley
Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)

# EXHIBIT B



Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

September 25, 2024

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>**By ECF**</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    <u>**United States v. Roman Storm**</u>
         <u>**23 Cr. 430 (KPF)**</u>

Dear Judge Failla:

We write on behalf of our client Roman Storm to respond to the government's September 18, 2024 letter motion in which it seeks (1) expert disclosures that would contravene Federal Rule of Criminal Procedure 16; and (2) notice of any advice-of-counsel defense by October 14, 2024. (*See* Dkt. 79 ("Mot.").) Throughout the letter, the government mischaracterizes the defense positions and what has transpired between the parties regarding these issues.

At the outset it must be noted that the defense has repeatedly sought to reach agreement with the government on a comprehensive pretrial schedule (including the disclosure of any advice-of-counsel defense) that would permit an orderly and efficient trial. The government has rejected these efforts at every turn because it insists on receiving pretrial expert disclosures to which it is not entitled. Because the defense has not requested expert disclosure from the government, the plain language of Rule 16 makes it clear the government is not entitled to receive it from the defense. This is no mere formality. Requiring detailed disclosures from the defense absent the consent of the defendant would tread upon traditional concerns about forcing the defense to reveal strategy and otherwise protected and confidential information. That is precisely why Rule 16 is written the way it is. And those concerns have only been heightened with the recent amendments to the rule requiring even greater substantive disclosure once a defense request has been made.

The government's claims that without Rule 16 pretrial expert disclosures any trial will be a "recipe for chaos" and that the defense is engaged in "gamesmanship and transparent efforts to conduct trial by ambush, which will result in unnecessary and potentially substantial mid-trial delays" are not true (nor are the *ad hominem* attacks warranted or productive). (*See* Mot. at 2, 4.) Many trials proceed in an orderly manner without Rule 16 pretrial expert disclosures (again, Rule 16 explicitly contemplates such scenarios), including one that the government references but asks the Court to ignore, the *Thompson* trial. (*See* Mot. at 5.) The defense has also been



willing to agree to a mutual set of more limited pretrial expert disclosures (*e.g.,* the exchange of CVs and brief summaries of the expected expert testimony) that the government has rejected. Further, the defense is mindful of the pertinent Federal Rules of Evidence governing expert testimony and will abide by them. The Court will also have ample opportunity to efficiently enforce them against both parties.

Lastly, the government's misguided claims of defense "gamesmanship" and "trial by ambush" actually apply to the government's position that unless the defense accedes to its demand for its version of pretrial expert disclosures, it will not provide 3500 material for government witnesses until after they are finished with their direct examination. The government tries to downplay this position, which it has repeatedly communicated to the defense, by dancing around it in a footnote. (Mot. at 2 n. 1.) To be clear, the government has made plain that its position on 3500 materials is retaliation for the defense following Rule 16's procedures.

Rather than grant the government's requests, the defense respectfully asks that the Court order the holistic schedule it has repeatedly offered to the government.

- **The Defense Welcomes a Scheduling Order and Has Repeatedly Sought Agreement from the Government.**

The defense has always and continues to want a pretrial scheduling order that permits an orderly and efficient trial and has made numerous efforts to reach agreement with the government on one (offering concessions and the willingness to be flexible in the process) without success so far.

On July 12, 2024, the Court held a hearing on pretrial motions and, with the consent of the parties, moved the trial date from September 23, 2024 to December 2, 2024. (*See* Dkt. 67.) At the hearing, the government estimated a two-week case (which the defense understands includes its estimated potential one-to-two day case-in-chief). (7/12/24 Tr. 107:18.) The trial is thus scheduled to conclude no later than December 13, 2024.

Following the Court's issuance of a revised scheduling order on July 15, 2024 (Dkt. 67), the parties met and conferred on August 2, 2024, with the government requesting the defense select a date to notify it of any advice-of-counsel defense. In response, on August 4, 2024, the defense emailed the government, in pertinent part:

> We have considered your request to select a date to notify you of whether our client intends to proceed with an advice of counsel defense. We are willing to consider selecting such a date, but we want it to be part of a holistic setting of trial-related dates for things not already covered by the Court's updated scheduling order (e.g., exchange of witness and exhibit lists and 3500 disclosure), which is attached for your convenience.



September 25, 2024
Page 3 of 9

Here is our proposal with existing dates in bold:

- October 14 (Monday) – Govt provides 404(b) notice; Defense provides notice of intention to assert an advice of counsel defense
- **November 4 (Monday) - Requests to Charge, Voir Dire, MILs**
- November 8 (Friday) - Govt provides 3500 materials
- **November 11 (Monday) – MILs oppositions**
- November 18 (Monday) - Parties provide exhibit and witness lists
- **November 19 (Tuesday) - Final pretrial conference**
- **December 2 (Monday) - Trial**

Although we are not requesting expert disclosure under Rule 16 (as we've previously discussed), we are open to a more limited mutually agreed up set of disclosures, e.g., sharing CVs, on a certain date. Please let us know your thoughts.

The defense followed up several times with the government, and finally the government responded on August 23, 2024, asking to talk. The parties spoke on August 26, 2024, at which time the government again inquired about whether the defense intended to provide pretrial expert disclosures pursuant to Rule 16, and, to the extent Mr. Storm provided notice of an advice-of-counsel defense, whether the defense would also produce any relevant documents. The defense explained that it did not, but was willing to consider other options like voluntarily agreeing to the expert disclosures under the prior version of Rule 16, and that it would consider the latter question. The defense emailed back on September 12, 2024, in pertinent part:

One thing you asked when we last spoke on August 26 was whether our proposal to provide notice of the intention to assert an advice of counsel defense would also include providing the relevant materials. We have considered your request, and assuming we reach agreement on our proposed holistic schedule, materials would be provided along with any notice to assert that defense on October 14.

Please advise us on the status of our proposal. We understand you've been considering it and the points we raised when we last spoke.

The government emailed on September 13, 2024, asking to talk again. The parties spoke on September 17, 2024, but the government once again refused to agree to any schedule barring a defense commitment to expert disclosures pursuant to Rule 16, despite the defense offering



again to consider alternative, voluntarily agreed upon disclosures (although not as expansive as the current Rule 16). The government filed its pending letter motion the next day.

The defense's proposed holistic schedule will permit an orderly and efficient trial. The defense wants nothing more than to stick to the two-week trial schedule (December 2-13) for a host of reasons. In addition to Mr. Storm wanting his "day in court," members of the defense team and surely the Court, its staff, the government, and prospective jurors have preplanned family holidays that they do not wish interrupted by unnecessary trial delays. Further, the defense is aware that the Court has a lengthy trial starting in early January 2025. (7/12/24 Tr. 107:10-11).

The lack of Rule 16 pretrial expert disclosures would not impede an orderly and efficient trial for a number of reasons that will be discussed further below. In advance of that more detailed discussion, it should be noted that one reason there should be no unnecessary delay is that the defense is willing to provide certain expert disclosures (*e.g.,* CVs and a short summary of expected testimony) before trial, assuming the government agrees to do the same and provides 3500 materials sufficiently before trial so the defense can review it to prepare for cross-examination and file any necessary motions *in limine*. This willingness to try to find middle ground was repeatedly communicated to the government and rejected by it.

- **The Government's Pretrial Expert Disclosure Request Violates the Plain Language of Rule 16 and Should be Denied.**

Since the defense never requested Rule 16 expert disclosures from the government, the Court should not grant government's request for pretrial expert disclosures followed by a *Daubert* hearing two weeks before trial.

Rule 16 requires a defendant to make expert witness disclosures to the government *only if* the defendant first requests such information from the government and the government complies with that request. The relevant text could not be clearer:

> At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, *if*:
> - the defendant requests disclosure under (a)(1)(G) and the government complies; or
> - the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

Fed. R. Crim. P. 16(b)(1)(C) (emphasis added). The government notes that the expert disclosure provisions of Rule 16 were amended in 2022 to address the lack of specificity regarding the



types of information that must be disclosed and the absence of an enforceable deadline for disclosure. (Mot. at 3.) But these amendments did nothing to change the conditional nature of a defendant's obligations, which, again, are triggered *only if* the defendant first requests disclosure from the government.

Indeed, courts have consistently recognized that the drafters of Rule 16 intended to include this conditional disclosure requirement as a constitutional safeguard for the defense. For example, in *United States v. Harwin*—a case the government ignores—the trial court emphasized the legislative intent and constitutional underpinning behind this language:

> As other courts have noted, if Congress believed that "disclosures as to expert witnesses creates a unique situation that mandates providing the government with such information," Congress "could have easily carved out an exception in Rule 16 as to expert[s]." (Doc. 114-1 at 3.) Even more, there are constitutional implications to compelling such criminal discovery. *See, e.g.*, *Wardius v. Oregon*, 412 U.S. 470 (1973); *United States v. Bump*, 605 F.2d 548, 552 (10th Cir. 1979) (finding disclosures pursuant to Rule 16(b) constitutional in part because "the prosecutor's right of discovery arises only after the defendant seeks discovery of similar evidence from the government").

No. 2:20-CV-115-JLB-MRM,2021 WL 5707579, at *2 (M.D. Fla. Oct. 29, 2021). The government nevertheless argues that, pursuant to the Court's "discretion and its gatekeeping function, Federal Rule of Criminal Procedure 57(b), and Federal Rule of Evidence 702," as well as the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court should ignore the plain language of Rule 16 and order Mr. Storm to make expert disclosures in advance of a pre-trial *Daubert* hearing that it concurrently requests. (Mot. at 6.) The Court should not entertain the government's request. *See Harwin*, 2021 WL 4868439, at *2 (rejecting the government's request to draw on Rule 57(b) to order defense expert disclosures because "the Rules' plain language limits the Court's power to, outside the context of Rule 16, order a defendant to disclose information as to potential expert witnesses").

No matter how much the government may *prefer* that Mr. Storm disclose any potential experts in advance of trial, neither the clearly worded text of Rule 16 nor the government's case law addressing expert testimony in the context of civil discovery provide a basis to *require* that the defense make such disclosures absent a defense request to the government for such disclosures.[1]

---

[1] The government's citation on page 3 of its motion to *United States v. Ulbricht*, 858 F.3d 71, 114-18 (2d Cir. 2017) is misleading because the defendant there simply failed to comply with the procedural requirements of Rule 16, which he had invoked (unlike here), by providing late and



Indeed, the district court in *United States v. Thompson*, No. CR19-159-RSL, 2022 WL 841133 (W.D. Wash. Mar. 21, 2022) addressed this precise issue in a well-reasoned order that the government summarily tries to dismiss. (*See* Mot. at 5.) There, the district court rejected the argument—identical to the government's position in the instant case—that Rule 16 "controls as to the scope of defendant's pretrial discovery obligations" but "does not control the Court's discretion to manage trial procedures or exercise its expert witness gatekeeping function under Fed. R. Evid. 702, *Daubert* [...], and *Kumho*." *Thompson*, 2022 WL 841133 at *1. The *Thompson* court instead appropriately held that Rule 16 "is controlling law setting forth pretrial discovery *procedure*" and "sets forth not only the content of discovery, but the conditions under which it must be disclosed." *Id*. (emphasis in original) (citing *United States v. Dailey*, 155 F.R.D. 18, 21–22 (D.R.I. 1994) (holding that court's inherent authority could not provide a basis for upholding a standard order that removed the conditional element and made defendant's obligations automatic)). While the *Thompson* court acknowledged a district court's "broad discretion to exercise its gatekeeping function," it found that "'the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute.'" *Id.* at *2 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)). As such, the *Thompson* court concluded that Rule 57(b) does not permit the issuance of an order that "would circumvent the conditional disclosure procedure set forth" in Rule 16. *Id.*

To make matters worse, the government outright ignores other precedent aligned with *Thompson*. *See Harwin*, 2021 WL 5707579, at *1-2; *see also United States v. Penn*, No. 20-CV-00152-PAB, 2021 WL 4868439, at *1 (D. Colo. Oct. 19, 2021) (denying the government's motion to compel defense expert disclosures where the applicable defendant did not make a reciprocal request of the government). In *Harwin*, the defense declined to request expert disclosures under Rule 16(a)(1)(G) and thus maintained it had no obligation to provide reciprocal disclosures pursuant to Rule 16(b)(1)(C)(i). *Harwin*, 2021 WL 5707579, at *1. The government there, however, took the position that it has taken here—that the trial court should order such defense disclosures because it has the inherent authority to do so. *Id.* The *Harwin* court rejected that request, finding that "because [the defendant] did not request disclosure under Rule 16(a)(1)(G), Rule 16(b)(1)(C) does not require that he 'must' provide the United States the requested expert information." *Id.*

Rather than address the reasoning of *Thompson* or *Harwin*, the government states that it "respectfully disagrees" with the *Thompson* decision, points out that it is not binding, and draws the Court's attention to the (equally non-binding) language in *United States v. Impastato*, 535 F. Supp. 2d 732 (E.D. La. 2008) to argue that district courts retain "some discretion" under *Daubert* to order pretrial expert disclosures even absent the defendant's request. (*See* Mot. at 5-6.) Yet even that decision—the only one the government cites in support of its interpretation of Rule 16—does not actually support the government's position here. The *Impastato* court did not order

---

"plainly inadequate" expert disclosures in response to the government's request. *See Ulbricht*, 858 F.3d at 115. In other words, the decision involved the adequacy of a defendant's disclosures and did not address whether such disclosures are required absent a defendant's initial request.



the defendant to disclose its experts to the government; it ordered the defendant to submit the identity and subject matter of any potential expert witnesses *in camera*, after which the court would order reciprocal discovery *only if* it found that "the witness's testimony [was] of such nature that immediate disclosure to the [g]overnment [was] warranted in order to facilitate the efficient operation of the trial." *Impastato*, 535 F. Supp. 2d. at 743-44. The *Impastato* court, in fact, first recognized that "only [the Federal Rules of Criminal Procedure] can impose the duty of disclosure on defendants, regardless of the authority of the judge." *Id.* at 743; *see also United States v. Layton*, 90 F.R.D. 520, 523 (N.D. Cal. 1981) ("[T]here is no authority for the proposition that a court has inherent authority to compel a defendant to provide pretrial discovery which is not specifically authorized in Rule 16."). Further, the *Impastato* court recognized that *Kumho* only addressed *civil* expert discovery and thus concluded that any procedure it adopted "must be crafted in a way that respects the fact that the [d]efendant has no obligation to present a defense until the [g]overnment has established its case." *Impastato*, 535 F. Supp. 2d at 743.

Because the plain language of Rule 16 and the law surrounding its interpretation are clear and in the defense's favor, the government resorts to discussing *United States v. Eisenberg*, 23 Cr. 10 (AS), in which only one member of this defense team was counsel, to bolster its case for its unprecedented request. (*See* Mot. at 5.) This attempt to sully the defense should be rejected since it is irrelevant to the legal analysis that controls.[2] For this reason, the defense does not believe it is necessary or efficient to relitigate what happened in *Eisenberg* but does feel compelled to at least note that the government takes what happened out of context and omits key facts and details.[3] For example, the expert the government references in its motion testified extensively and effectively on a number of topics in the defense case-in-chief, the trial ended within the time period of the parties' original trial estimates, and, at the end of the trial, the Court was complimentary of all trial counsels' efforts.[4]

Turning to what happened in the *Thompson* case, which the government glosses over, the Court should know that, after the ruling denying the government's request for Rule 16 pretrial expert disclosures, the parties agreed to include in their trial briefs (which were filed shortly before trial) short summaries of their proposed expert witnesses' qualifications and expected

---

[2] For this reason, the defense has not similarly tried to scour the transcripts and rulings of the four prosecutors on this case to find examples of where judges questioned their handling of experts. That said, this District's U.S. Attorney's Office has been criticized for its Rule 16 expert disclosures in the past, notably by Judge Rakoff in November 2023. *United States v. Mrabet*, 703 F. Supp. 3d 442, 445 (S.D.N.Y. 2023) (criticizing the government for "shoddy noncompliance with amended Rule 16" in disclosing expert reports that failed to provide the bases and reasons for each of the expert's opinions).)

[3] The government also misremembers when defense counsel first broached the issue of not engaging in pretrial expert disclosures. It was at the beginning of the *Eisenberg* trial.

[4] Judge Subramanian stated: "Thanks to both sides for a very well-tried case. I really appreciate it." (Tr. 1525:15-16.)



September 25, 2024
Page 8 of 9

testimony.[5] Both parties' experts testified, and there were no delays in the jury trial, with it ending on schedule and the Court complimentary of all the trial attorneys (including a member of the current defense team).[6] The defense is open to a similar type of agreement with the government here. Moreover, to the extent the defense calls any experts (and it is currently contemplating several prominent ones), it is committed to making sure they meet the requirements of and abide by the pertinent Federal Rules of Evidence.

It also bears noting that there is nothing stopping the government from providing Rule 16 pretrial expert disclosures to the defense if it wishes and genuinely believes they are absolutely critical to avoiding unnecessary trial delays. After all, any experts that the government calls will testify before any possible defense experts do, and the defense may choose not to call any experts. Tellingly, however, the government only wants to make its disclosures if the Court orders the defense to do so.

Overall, the government encourages the Court to ignore not only the plain language of Rule 16 but also the conditional nature of the *Impastato* court's order and simply "order the parties to make expert disclosures in advance of the hearing." (*See* Mot. at 6.) Further, the government ignores the fact that the defense is open to more limited pretrial expert disclosures, assuming there is a holistic schedule in place, suggesting instead (and without foundation) that the defense intentionally seeks to sow trial chaos and engage in gamesmanship. The Court should reject the government's arguments as unsupported by the law and deny its request for an order mandating pre-trial expert disclosures as in clear contravention of the clear procedures set forth in Rule 16.

- **The Court Should Not Order the Pretrial Disclosure of Any Advice-of-Counsel Defense Unless the Government Also Provides 3500 Materials Sufficiently in Advance of Trial.**

Despite claiming that it is interested in trial efficiency, the government actually seeks an unfair advantage at trial by asking the Court to exercise its authority to order the defense to provide notice of the advice-of-counsel defense while planning to withhold 3500 material until after its witnesses testify on direct.

---

[5] As an example, the defense disclosed in its trial brief: "Professor Halderman is a Professor of Computer Science and Engineering at the University of Michigan as well as its Director of the Center for Computer Security and Society and Director of the Software Systems Laboratory. He is considered a worldwide leading expert on computer security. Should he testify, Professor Halderman will offer testimony regarding the subjects addressed by the proposed government experts Wayman Ho, John Strand, and Vincent Kenney, as outlined in the government's trial brief. (Dkt. No. 255 at 20-21.)." *See Thompson* Dkt. 277.

[6] Judge Lasnik stated, for example: "Superb presentation by Ms. Thompson's lawyers." (10/10/22 Tr. 3:5.)



"The Federal Rules of Criminal Procedure do not explicitly require the defense to provide notice of an advice-of-counsel defense." *United States v. Ray*, Case No. 20-CR-110 (LJL), 2021 WL 5493839, at *4 (S.D.N.Y. Nov. 22, 2021). Rule 12 only requires the defense to provide notice of an alibi defense, an insanity defense, or a public-authority defense. *See* Fed. R. Cr. P. 12.1-12.3. Thus, any "authority to require notice of an advice-of-counsel defense derives from the court's inherent authority to manage the trial before it . . . as well as from Rule 16 …, including the reciprocal obligation on the defense to produce discovery under Rule 16(b) and the power of the court to regulate discovery under Rule 16(d)." *Ray*, 2021 WL 5493839 at *5 (citations omitted).

Accordingly, to the extent the Court is inclined to grant the government's request to set a deadline for the defendant to provide notice of an advice-of-counsel defense, the Court should make it conditional on the government agreeing to produce 3500 material at the same time. Absent such reciprocity, the defense would be unduly prejudiced by potentially being required to disclose a major portion of its defense strategy in advance of trial while the government hides the proverbial ball, defeating the purpose of Rule 16. *See id.* ("The purposes of Rule 16 are 'to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a broad, reciprocal, right to discovery.'" (quoting *United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2019)).

\*\*\*

For all the above reasons, the Court should deny the government's two requests and instead order the defense's proposed pretrial schedule.

Respectfully submitted,

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP

-and-

David E. Patton
Hecker Fink LLP

*Attorneys for Roman Storm*

# EXHIBIT C

```
OAABSTOA
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          23 Cr. 430 (KPF)

 5   ROMAN STORM,

 6

 7            Defendant.

 8                                        Oral Argument
     ------------------------------x
 9
                                          New York, N.Y.
10                                        October 10, 2024
                                          4:00 p.m.
11

12   Before:

13
                       HON. KATHERINE POLK FAILLA,
14
                                          District Judge
15
                             APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  NATHAN M. REHN II
          KEVIN MOSLEY
19        BENJAMIN A. GIANFORTI
          BEN ARAD
20        Assistant United States Attorneys

21   WAYMAKER, LLP
          Attorneys for Defendant
22   BY:  BRIAN E. KLEIN
          KEVIN CASEY
23        KERI AXEL

24   HECKER FINK, LLP
          Attorneys for Defendant
25   BY:  DAVID E. PATTON
```

OAABSTOA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

OAABSTOA

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government,

3     counsel, note your appearance.

4          MR. REHN:  Good afternoon, your Honor.  This is Than

5     Rehn appearing for the United States.  I'm joined here in my

6     office by Ben Gianforti.  We also have on the line Kevin Mosley

7     and Ben Arad.

8          THE COURT:  Thank you, and good afternoon to each of

9     you.  And representing Mr. Storm, do I have Mr. Klein and

10    others?

11         MR. KLEIN:  Good afternoon, your Honor.  Thank you

12    again for accommodating us with the telephonic conference.  You

13    have myself, Keri Axel Kevin Casey, and we also have David

14    Patton.  He's dialed in.  He couldn't get into this line, but

15    he won't be speaking, but he's also listening in.  And we also

16    have our client who's dialed in Mr. Storm.

17         THE COURT:  Thank you very much, and good afternoon to

18    each of you.  Mr. Klein, you sort of suggested this in your

19    response to me, but I believe that you and your client have

20    discussed his right to have this proceeding take place in

21    person and that he is waiving that right?

22         MR. KLEIN:  That is correct, your Honor.

23         THE COURT:  Let me please confirm that with Mr. Storm.

24    May I speak with him directly, Mr. Klein?

25         MR. KLEIN:  Yes.

OAABSTOA

1          THE COURT:  Thank you.  Mr. Storm, first of all I want

2     to be sure you can hear us this afternoon.  Can you, sir?

3          THE DEFENDANT:  Good afternoon, yes.  Yes, I can hear

4     you well.

5          THE COURT:  Okay.  Good. My deputy also advises me

6     just if you're wondering that there are also eight listen only

7     participants on this conference as well.  I just want to make

8     sure that's there for the record.  Mr. Storm, your attorney and

9     I have been speaking and as happened at a prior conference of

10    ours, I believed it was easier for everyone to participate

11    telephonically just given the distance folks would have to

12    travel.  Mr. Klein advises me that you and he have discussed

13    the matter, that you're aware of your rights to have this

14    proceeding take place in person; and that you are consenting or

15    waiving your right to have it take place in person and

16    consenting to a telephonic proceeding.  Is all of that correct,

17    sir?

18         THE DEFENDANT:  Yes, that's all correct.  Thank you.

19         THE COURT:  Mr. Storm, thank you for letting me know.

20    Friends, I've been thinking about everyone's submissions.  I've

21    been doing a lot of talking with a lot of other judges.  And I

22    mentioned I did have a few questions that I'd like to ask the

23    parties just to fill in some gaps that I have, or perhaps to

24    dispel some misimpressions that I have, so let me do that. And

25    then depending on your answers, I will either have the ability

OAABSTOA

1  to give you a decision immediately, or I might need a little

2  bit of time.  So let's hope for the former.  Thank you.

3      Mr. Rehn, I'm told I should be directing government

4  inquiries to you.  Is that correct, sir?

5      MR. REHN:  Yes, your Honor.

6      THE COURT:  Perhaps I am misreading the parties'

7  submissions, but there was a suggestion in the defense

8  submission that the government is taking a very textualist

9  approach to the Jencks Act, and that they're planning on not

10 producing 3500 material until after the witness' testimony.  Is

11 that correct or have I just misunderstood?

12     MR. REHN:  No, your Honor.  We've been I think as we

13 say in our letter attempting to have a discussion with them

14 across a range of issues.  And as part of that discussion, we

15 have expressed a willingness to produce materials pursuant to

16 Section 3500 in advance of trial.  And have hopes that that

17 would be part of an agreed upon agreement as to all pretrial

18 disclosures.  Because we haven't been able to reach that

19 agreement, we haven't yet decided the timing for those

20 disclosures in particular.

21     THE COURT:  And I guess I understand that a little

22 better than I did a moment ago.  Is it actually the

23 government's contemplation -- if I can use the Failla parlance,

24 is there a world in which you would not produce 3500 material

25 until after the witness testified?

OAABSTOA

1          MR. REHN:  That is very much not our practice, so I

2     don't expect that would be the world that we would anticipate

3     going into the trial.  I do think the timing of those

4     disclosures is something we frequently include in our

5     discussions with defense counsel about a range of hoped for

6     agreed upon pretrial disclosures.  And so the precise timing of

7     those disclosures is something that we are continuing to

8     include in our discussions with defense counsel.

9          THE COURT:  I see.  The way I'm looking at it,

10    Mr. Rehn, we're here.  You're talking to me because you haven't

11    worked that out.  Is it possible that I could suggest a

12    production schedule of 3500 material to the parties?

13         MR. REHN:  There's precedent in the Circuit that says

14    that Rule 3500 is not something that the government can be

15    ordered to do in advance of the specific time that's set forth

16    in the statute.

17         THE COURT:  And please, sir, let me be very clear

18    about the question I asked you.  That's exactly why I use the

19    term "suggest." I'm familiar with *In Re United States*, 834 F.2d

20    283 from 1987 which tells me that, so I get it.  I guess what

21    I'm asking is, you're talking about negotiating things, but

22    there are some issues that I imagine that the parties or that

23    the parties do want me to resolve.  Is it your contemplation

24    that after I resolve the issues of expert witness disclosures

25    and advice of counsel disclosures, that then the parties are

OAABSTOA

1  going to negotiate the 3500 material?

2          MR. REHN:  Your Honor, I think the position we've

3  articulated in our letter, it reflects our view that the best

4  thing to do is figure out a way to have pretrial disclosures to

5  facilitate the efficient presentation of evidence at trial

6  without unnecessary interruptions.  And my expectation is that

7  we will produce 3500 material in a manner that allows for that

8  after the Court resolves our issues relating to the expert

9  disclosures.

10          THE COURT:  Okay.

11          MR. REHN:  And our usual practice would be to produce

12  it in advance of trial.

13          THE COURT:  Yes, I know.  Again, I am aware of Second

14  Circuit precedent on this issue, that's why I'm couching in

15  terms of suggestion or a request.  I will say I don't know that

16  I knew, or at least did not focus on this idea that a judge

17  couldn't order earlier disclosures.  Because heaven knows, I've

18  both ordered and been ordered to produce things earlier.  I

19  don't remember your office invoking *In Re United States* cases

20  of that type previously, but we all know that they are there.

21          Mr. Rehn, that actually leads me to my next question

22  which is this:  As I understand, the decision, the *In Re United*

23  *States* decision from 1987, what it stands for is the

24  proposition that a court's inherent power does not trump the

25  production schedule or the production deadline that's listed in

OAABSTOA

1   the Jencks Act, such that a district court lacks the power to

2   order production on an earlier timetable.  Perhaps I'm

3   overstating the issue, but that's how I'm looking at it.  If

4   you hold that same view of the case, could you help me

5   understand how I can reconcile the inherent power I have or

6   don't have to order early 3500 material disclosure with the

7   inherent power I have or don't have to order disclosure of

8   expert witness disclosures under Rule 16 without the triggering

9   event of the defense making a request for them?

10          MR. REHN:  Yes, your Honor.  So first off the issue of

11   the Court ordering pretrial expert disclosures is, as far as we

12   can tell, an issue of first impression, not just in this

13   district, but in this Circuit.  So unlike with respect to 3500,

14   there's no binding precedent on this issue from any prior

15   court.  There are some decisions from other district courts

16   that are cited in the parties' letters.

17          THE COURT:  Yes.

18          MR. REHN:  But I think the core principle here is that

19   there's Rule 16 in the Federal Rules of Criminal Procedure

20   which does provide for certain provisions for pretrial

21   disclosures.  And in addition to that, the actual presentation

22   of evidence at trial is governed by the Federal Rules of

23   Evidence which include Rule of Evidence 702.  And under Rule of

24   Evidence 702, the Court has an inherent gatekeeping authority

25   pursuant to the Supreme Court's decision in *Daubert* and *Kumho*

OAABSTOA

1  *Tire* and has discretion in determining how to exercise that

2  gatekeeping authority.  What we're simply saying is that

3  there's basically apparently two ways that are being proposed

4  here for the Court to exercise its gatekeeping discretion.  One

5  which would involve resolving evidentiary objections to expert

6  testimony shortly in advance of trial, and one which would

7  involve a potentially lengthy mid-trial adjournment, possibly

8  multiple mid-trial adjournments to allow the parties to review

9  and respond to each other's disclosures; and then present any

10 potential objections to the Court at that point in time.

11        And we would suggest that the Court should exercise

12 its discretion that is clearly afforded it pursuant to the

13 *Daubert* line of cases to order that proceeding in such a way to

14 avoid that sort of a mid-trial adjournment.  And the law does

15 contemplate that the trial court has discretion to decide when

16 and how to address expert objections.

17        THE COURT:  Let me ask a question in the 702 vein.

18 You're familiar with -- and this may sound a little bit

19 over-academic.  That's the appellate lawyer in me, so please

20 excuse me.  You're familiar, sir, with the concept of the if,

21 as or when subpoena?

22        MR. REHN:  Yes, your Honor.

23        THE COURT:  If the government filed a *Daubert* motion

24 expressing concern about the reliability or about the

25 admissibility of Mr. Storm's contemplated expert testimony,

OAABSTOA

| | |
|---|---|
| 1 | which as yet has not been foreshadowed or introduced.  Do you |
| 2 | believe that I would have the power to order them to disclose |
| 3 | sufficient information to allow me to make findings under Rule |
| 4 | 702, under perhaps Rule 403, and under the *Daubert* line of |
| 5 | cases, is that the argument that you're making to me now?  That |
| 6 | you could today file a motion saying, we are worried that this |
| 7 | stuff may not be admissible; therefore, we're asking to require |
| 8 | them to disclose it and to set a schedule for a *Daubert* |
| 9 | hearing, or do you think it's something I can do sua sponte or |
| 10 | both? |
| 11 | MR. REHN:  Well, I think that's what we're essentially |
| 12 | saying in our letter motion.  I don't think we currently have |
| 13 | an articulable basis to object to expert testimony in the |
| 14 | contents of which we don't know.  And so we're aware from our |
| 15 | conversations with defense counsel that they are contemplating |
| 16 | certain experts.  We're aware from the motions they filed in |
| 17 | the case that that is likely to involve technical issues |
| 18 | relating to things like cryptocurrency, transactions, computer |
| 19 | software, issues that involve quite a bit of work to even |
| 20 | understand for a lay person like myself usually with the help |
| 21 | of our own experts to try to figure these issues out. |
| 22 | And so in order to be able to -- for both parties to |
| 23 | be able to review the disclosures, decide whether there are |
| 24 | things that aren't proper expert testimony, and then explain |
| 25 | them in briefing to the Court, and for the Court then to have |

OAABSTOA

1   the opportunity to rule on those would take a reasonable amount

2   of time.  Even a 24-hour adjournment in the midst of trial I

3   don't think would probably be enough to do that level of work.

4   And so what we're saying is, in light of the clear anticipated

5   complicated expert testimony that's at issue in this case, it's

6   an appropriate case for the Court to exercise discretion to

7   have those proceedings take place in advance of the time the

8   jury is sworn.

9           THE COURT:  Do you think, sir, my authority rises, if

10  at all, from the Federal Rules of Evidence and not from Rule 16

11  and not from my inherent powers; or do you think it's a

12  combination?  By the way, I'm not saying I agree with you.  I

13  just want to make sure I understand the point.

14          MR. REHN:  I think we take the point that is raised by

15  defense counsel that the specific aspects of Rule 16 that

16  require disclosures are triggered by defense request for

17  disclosures.  But we do think that the underlying purpose of

18  Rule 16 clearly contemplates that what the advisory committee

19  was trying to do was avoid mid-trial surprise, and ensure that

20  fair and efficient presentation of evidence for the jury.  And

21  so it should be considered in accordance with the Federal Rules

22  of that Evidence that are going to govern this expert

23  testimony.  And under those rules of evidence, there's I don't

24  think any question that the trial court does have discretion to

25  decide in the words of the Supreme Court in the *Kumho Tire*

OAABSTOA

1   decision, 526 U.S. at 152 "whether or when special briefing or

2   other proceedings are needed to investigate reliability."  And

3   so there is an avenue under Rule 702 to set the trial

4   proceedings up in such a way so that the Court is best

5   positioned to exercise the gatekeeping authority without

6   creating a problem with a mid-trial adjournment.

7           THE COURT:  Okay.  Thank you.  Just one moment,

8   please.  Mr. Rehn, your adversary has suggested that there's

9   nothing that prevents the government from disclosing the expert

10  testimony and information on its own.  I presume you're just

11  going to tell me that yes you can, but you would much prefer to

12  disclose it in some sort of negotiated resolution with the

13  defense.  Yes?

14          MR. REHN:  Yes, or a schedule ordered by the Court.  I

15  think there are considerations of fairness that have to be

16  taken into account, along with conditions considerations of

17  efficiency.

18          THE COURT:  Okay.  Thank you.  Mr. Klein, could I hear

19  from you, sir.  I have a little better sense now about the

20  government's perspective on the 3500 material.  Would you

21  please engage in the discussion I was just having with counsel

22  about the Federal Rules of Evidence recognizing, sir, that

23  perhaps similar arguments may have been made to the judge in

24  Washington?

25          MR. KLEIN:  Your Honor, I think Rule 16 is very clear

OAABSTOA

1   and was crafted in a way that is clear, and that Rule 702 even

2   read that way doesn't trump it, otherwise it would drive a hole

3   through the rule.

4           THE COURT:  Okay.  Is there anything -- and, sir, that

5   was really -- I have candidly more questions for the government

6   than I have for the defense.  But if there's anything else

7   you'd like to comment on based on the conversation I had with

8   Mr. Rehn, please tell me now?

9           MR. KLEIN:  Two things.  One is, the government did

10  tell us they weren't going to give 3500 material unless we gave

11  defense expert disclosures, and that was the real hangup in our

12  negotiations.  We really do and have consistently wanted a

13  holistic schedule as I think you saw in our letter.  But the

14  second point is, there's one point for consideration you

15  haven't touched on is the advice of counsel disclosure.  And I

16  think we noted that there's an issue of fairness there if the

17  3500 materials aren't being handed over.  We've been working

18  diligently on a set team as a defense.  And sort of in light of

19  sometime that has past, some discovery and us delaying I think

20  makes one amendment to our request in our letter that 404(b)

21  and advice of counsel, we'd be given two additional weeks until

22  October 28.

23          In our letter we had put in October 14, which is next

24  week, so that's actually this coming Monday.  So I just wanted

25  to note that our request now is that the schedule would be as

OAABSTOA

1  outlined in our letter, but with the October 14th date moved to

2  October 28.

3      THE COURT:  Just so that I'm clear, sir, you'd be

4  willing to produce advice of counsel and 404(b) notice only if

5  the entirety of your schedule is adopted as well, sir.  Am I

6  correct?  Let me be more pointed.  Okay.  Let's say that I am

7  not ordering production one month in advance of 3500 material.

8  Are you still willing to give early notice of the advice of

9  counsel or not?  I'm fine either way.

10     MR. KLEIN:  I think we would need to think about that,

11 your Honor.  Again, our contemplated schedule is November 8.  I

12 think we would want -- and again, as we noted at the end, it's

13 sort of an issue of fairness.  And I think we felt our schedule

14 that we proposed balances competing concerns by both parties,

15 but also giving everybody time to review and analyze stuff.  So

16 if the government is only suggested to produce 3500 or only

17 ordered, however it's phrased a week or two in front of trial,

18 we would want sufficiently more time to assess our advice of

19 counsel defense.  So maybe that's not as a direct answer you

20 would like, but I just --

21     THE COURT:  Well, you're exactly right.  It's not as a

22 direct answer as I would like. For me, sir, the issue is this.

23 I disagree with the defense's effort to link 3500 material and

24 advice of counsel defense.  I don't see them as joined at the

25 hip as you do.  That doesn't mean that I'm not going to ask the

OAABSTOA

1  government to produce it early.  Although as you've heard

2  Mr. Rehn tell me gently, I don't have the authority to order

3  it.  But I am not conditioning the advice of counsel disclosure

4  on the 3500 material, that's not something that I plan to do in

5  resolving this.  You'll see in a few moments because I need a

6  few moments to think about what you all just told me, and I

7  will then give you my decision.  But you'll see I have

8  uncoupled 3500 material and advice of counsel.

9           MR. KLEIN:  We would still ask for October 28 for the

10  advice of counsel defense. If the government's not going to be

11  producing -- even we understand your Honor is not coupling

12  them, we still view them as coupled respectfully.  And we would

13  ask for additional time past the 28th, so that's our position.

14           THE COURT:  Okay.  And let me say this as well, let's

15  talk about what we maybe agree on, which by the way may not be

16  much.  On page three of your letter, your September 25th

17  letter, sir, there are certain things that are bold, and those

18  are things that I ordered.  Obviously I don't plan on changing

19  the things that I have ordered, although I'll listen to the

20  parties if I needed to.  It was my contemplation that the

21  404(b) disclosures would be made in the motions *in limine*, that

22  I hear about it first in the motions *in limine*, parties seeking

23  to produce 404(b) evidence would do in the motions *in limine*.

24  And then I get the opposition one week later telling me why

25  that shouldn't happen.

OAABSTOA

1    So while you're asking for the 28th of October for

2 that disclosure, in my mind it was going to be disclosed on the

3 4th of November.

4    MR. KLEIN:  Your Honor, one point with that, sometimes

5 it's helpful, and the reason why we asked for it a little

6 earlier is sometimes we're able to negotiate a resolution of

7 the 404(b) issues that prevent the need for 404(b) motions.  So

8 that is one reason we contemplated it early.  I've had that in

9 the past with the government where they notice something.  You

10 talk about it with them, and then you reach an agreement so

11 your Honor doesn't have as many motions in front of the court.

12 That's one reason we put it in.

13    THE COURT:  Well, Mr. Rehn, opposition to that

14 friendly moment, sir.

15    MR. REHN:  It was also our view -- and generally it's

16 the practice that we would do the 404(b) as part of the motions

17 *in limine*, but I don't know if we're necessarily opposed to a

18 disclosure somewhat in advance of that.

19    THE COURT:  Well, one week in advance of that

20 suggest -- the reason to do it, which I know you know, is that

21 if you can agree on it, then you don't have to write me a

22 motion, and then I don't have to decide a motion.  That's not a

23 crazy thing, so I'm okay with that.  But wait.  Mr. Klein, does

24 that mean that you're also disclosing advice of counsel on that

25 day, or is that something you're still thinking about, sir?

OAABSTOA

1          MR. KLEIN:  Your Honor, that would be October 28.

2     Just to be clear, we were requesting October 28, for both of

3     those.  Now again, I'm not trying to be difficult with the 3500

4     on November 8th, but again we do see the benefit -- and I just

5     outlined it too, of getting 404(b) at least a week in advance

6     so we can try to work out a resolution and avoid unnecessary

7     motions.  Sounds like we have agreement with the government.

8          THE COURT:  Okay.  Let me be more explicit then with

9     what I was just saying.  Earlier in this conversation you said

10    to me that your thought was -- and indeed, in your letter it

11    was originally October 14th, but it is now October 28 -- the

12    idea of disclosing 404(b) and the advice of counsel defense.  I

13    believe that we just agreed -- and if not, I can order it --

14    that the government and you -- well, I guess really the

15    government -- provide 404(b) notice by the 28th of October.  So

16    that you've got.  And then we've got our motions.  Otherwise

17    the November 4th, November 11, November 19th dates remain the

18    same.  I guess I'm asking whether having negotiated that

19    resolution, you're willing to disclose advice of counsel on the

20    28th of October, or whether you want to hear more from me

21    before you make that decision?  I just want to know.

22         MR. KLEIN:  Your Honor, in light of that, I think we

23    will agree to the advice of counsel on the 28th; but again,

24    with the idea that the government will be producing 3500

25    sufficiently in advance of trial, whether you give us the date

OAABSTOA

1   we ask for, which we think is appropriate for fairness.  So I

2   think we are finding common ground here.

3          THE COURT:  Okay.  Well, I'm sad for the amount of

4   time we spent looking at advice of counsel defense, but if I

5   can bring the parties to a negotiated resolution all the

6   better.  All right.  Mr. Rehn, still there, sir?

7          MR. REHN:  Yes, your Honor.

8          THE COURT:  Okay.  Mr. Rehn, we now have a date of

9   October 28th for the 404(b) notice and the advice of counsel

10  disclosure.  We've got -- otherwise my dates are set.  Do you

11  have a thought about 3500 material, sir?  Because, remember,

12  we've been talking about negotiation, but that's sort of what

13  we've devolved to doing in this call.  Do you have a position,

14  or are you still thinking about that, sir?

15         MR. REHN:  Your Honor, I think in light of this

16  discussion, we do intend to produce the 3500 material in

17  advance of trial.  I think the 8th would be a challenge just

18  given the number of other things that are going to be done that

19  week.  So I would ask for probably the -- when I say ask, I

20  would sort of propose that we would plan on producing it more

21  like the following Wednesday or something.

22         THE COURT:  Okay.  All right.  The 13, November 13th,

23  for 3500.  That actually sounds great to me.  And Mr. Klein is

24  not going to tell me that he objects because that is fair.

25  What about the exhibit and witness list from the 18th of

OAABSTOA

1  November, sir, is that something the government can do?

2           MR. REHN:  One moment, your Honor.

3           THE COURT:  Of course.

4           MR. REHN:  Your Honor, I think we can work with that

5  deadline.

6           THE COURT:  Okay.  All right.  So that means we have

7  many things resolved.  But, Mr. Klein, I'm going back to you,

8  sir.  You've gotten a lot of what you've asked for, which is

9  great.  Mr. Klein, what about expert witness disclosures?  Are

10 we still there?  Is that something I need to resolve, or are we

11 in a really conciliatory mood and you might propose something

12 with the government?

13          MR. KLEIN:  Your Honor, we had talked to them about

14 disclosures short of current Rule 16.  They've rejected those

15 each time we raise those.

16          THE COURT:  And I wouldn't ask them for that either.

17 I agree.  I don't think that that's not -- that won't cut it.

18 I guess is there otherwise, what, the plan is to just disclose

19 at trial?

20          MR. KLEIN:  So, your Honor, I think when we disclose a

21 witness list, we would have to put the name of an expert that

22 we might call in there just to be clear.  I think that is

23 something we would contemplate doing.  It's not voluntarily or

24 however you want to look at it, but I think our plan is to

25 stick with Rule 16.  Maybe in the meantime we are able to

OAABSTOA

1    negotiate something with the government.  We will continue to

2    try to do so.  To be clear, we're not giving up on that front,

3    so I don't know if they change their mind on this call.  But

4    maybe after this hearing we all have time to think about it,

5    we'll be able to reach a resolution.  That's what happened in

6    the Thompson case that was referenced in both our briefs.

7                THE COURT:  I'm familiar with Thompson.  Mr. Klein,

8    let me be more precise, sir, excuse me.  I think I was being a

9    little bit too oblique.  I have in front of me an oral decision

10   resolving the parties' dispute about Rule 16.  I can give it,

11   or I cannot give it because the parties are going to continue

12   to negotiate it.  If you're not today comfortable making a

13   commitment or continuing to negotiate with the government

14   regarding the disclosure in accordance with the current version

15   of Rule 16 in terms of the content, then I can proceed with the

16   oral decision, or I can give you more of a chance to speak.

17   The reason I'm asking, sir, is we were getting along so well

18   for a few minutes there, and I do believe ultimately this trial

19   is better if the parties can negotiate it.  But I want to give

20   you that option, but if that's where you are, then I'll give my

21   decision.

22                MR. KLEIN:  Your Honor, that's where we are.

23                THE COURT:  That's an answer and that is fine.  Then

24   let me do this, please.  Just give me a moment.  I have notes,

25   but I have notes that I'm sort of annotating in light of the

OAABSTOA

1    discussions we've been having today.  And I just want to be

2    sure that they've not been rendered dated by our discussions

3    today.  Okay.  I'll ask for everyone's attention.  I'll ask you

4    to please mute your lines, and I will beg your indulgence as I

5    read this into the record.  My intention this afternoon is not

6    to read into the record a lot of the applicable case law and

7    statutes and rules.  I know the parties know what they are.  I

8    don't think they aid the transcript to have me read them word

9    for word into the record, so I'll make reference to them, and

10    I'll be incorporating some of them by reference.

11          So I begin by thanking you, and I guess I have more to

12    thank you for than when we started this conversation because at

13    least part of this motion seems to have resolved itself,

14    although I'll talk about that in a little while.  So thanks for

15    that.  Let me tell you also that in anticipation of this

16    decision, the way that I approached it given the paucity of

17    case law in the issue was to reach out to a rather large number

18    of my colleagues here in the Southern District to discuss the

19    parties' competing views on these issues.  And I actually

20    received a fair amount of feedback from my colleagues which was

21    great for me.  And I analogize it -- again, this is the

22    appellate lawyer in me -- to like a mini *en banc* of Southern

23    District judges on these areas.

24          And as to some of the issues I'm going to discuss,

25    there was sort of a universal consensus.  As to others, what

OAABSTOA

1    I'm going to outline is my position in the majority view.  I'll

2    also let the parties know that I engaged in extensive

3    conversations with Judge Subramanian, who if you're wondering

4    was much less sanguine about the conduct of the Eisenberg trial

5    than defense counsel recalls; and who really would have

6    preferred to hashed out these issues in full in advance of

7    trial rather than mid-trial.  But I also had a very lengthy and

8    very helpful chat with Judge Liman, who's just a very smart man

9    as all of you know who did a lot of work on the advice of

10   counsel defense in the Ray case, but also had a lot of things

11   to say about Rule 16.  So my decision today involved and

12   incorporates the wisdom of those two judges and the others

13   judges with whom I've spoken.

14          So I understand and you understand that the rules at

15   issue here include Federal Rule of Criminal Procedure 16, in

16   particular Subsections (a)(1)(G) and (b)(1)(C).  I've looked at

17   the advisory committee notes, in particular the advisory

18   committee notes, the 1997 and 2022 amendments.  The parties, at

19   least the government, has suggested that Federal Rule of

20   Criminal Procedure 57 might assist me in its Subsection B.  And

21   I've looked at the Federal Rules of Evidence, and I focused

22   mostly on Rule 104, Rule 403, Rule 702, and some of the others

23   in the 700 series.  And the parties know what the parties'

24   positions are with respect to the timing of expert disclosures.

25   And I do and I want to underscore I appreciate everyone's

OAABSTOA

efforts to come to a holistic agreement on these issues because
it takes up less of everyone's time.  And so really I to
appreciate that.  And I also do appreciate the opportunity this
afternoon to speak with the parties about what they really were
intending to do and what their thoughts were.

As I suggested in my conversations with Mr. Klein, I
don't condition Rule 3500 material and the advice of counsel
defense.  I don't condition Rule 3500 material and expert
witness disclosures.  I think that that's a little bit
different, but I understand his position on it.  I have looked
at, as I mentioned, the case on the issue, the *Thompson* case
and the *Impastato* case that were cited to me, although
*Impastato* predates it.  I did reach out to a number of my
colleagues.  And I'll tell you that the majority of the
colleagues who responded to me actually were agreed or believed
that I had the authority under my inherent power to set a
timetable for disclosure.  And let me just put that a little
bit differently.  These judges felt that while Rule 16 set
forth the content of the disclosures and a mechanism for
ensuring the fairness of pretrial disclosures, that there came
a point in the trial process where the Court's inherent power
to control the progress of the trial, the Court's concerns
about not wasting jury time, the Court's need to schedule a
pretrial as distinguished from mid-trial hearings interest the
calculus.  The belief was that the trial judge's duty to

OAABSTOA

1  control the trial process so that the jury can render a just

2  verdict allowed the Court and indeed required the Court to set

3  schedules so that admissible evidence was presented in a timely

4  and efficient manner.

5        One of my colleagues wrote back to me and said

6  specifically, we can't let gamesmanship trump justice.  And so

7  I thought about my inherent powers, and I would love to just

8  very easily say that these judges are correct.  I also know

9  that the advisory committee notes at least suggest that a

10  criminal defendant could not strategically avoid his or her

11  obligation to make timely disclosures by avoiding actions that

12  trigger disclosure obligations until trial.  And by the way as

13  a parenthetical here, I can't believe that the rules committee

14  which was seeking to enhance the detail and the timeliness of

15  disclosures would have enshrined or wanted to enshrine such

16  gamesmanship.  But there's language in the advisory committee

17  notes that suggest that I can order disclosures in order to

18  ensure enforceable deadlines.  And that seems to me that I have

19  that power even where one of the parties was seeking to delay

20  triggering -- that party being the defense -- seeking to delay

21  triggering the disclosure obligation.  But that's where we are.

22  If it turns out that my colleagues are wrong, and I don't have

23  the inherent power to overcome the triggering import of Rule

24  16, let me say this:  I absolutely have other sources of

25  authority to obtain this information.  And here I agree with

OAABSTOA

1    the arguments that the government is making today about my

2    ability under the Federal Rules of Evidence.  And to me that

3    includes Federal Rules of Evidence 104 which obligates me to

4    decide certain preliminary questions of admissibility where

5    such hearings are often conducted prior to trial so that the

6    parties and the Court can understand the ground rules. I also

7    think that Rule 702 and the *Kumho Tire Daubert* line of cases do

8    require me to make preliminary findings regarding the

9    qualification of experts, the relevance of their testimony, and

10   the reliability of their testimony.  So I do believe I have the

11   authority to resolve these Rule 702 issues prior to trial.  And

12   the fact that the disclosures that would have to be made to

13   satisfy Rule 702 and Daubert, the fact that they're essentially

14   if they're not very similar to or identical to, they're very

15   close to what's specified in Rule 16 does not foreclose me from

16   ordering such a disclosure pretrial.

17           As a result, I am including expert witness disclosures

18   within the existing trial schedule.  Anyone seeking to present

19   expert testimony at trial must present disclosures in

20   accordance with the current version of Rule 16 on or before

21   November 4.  Any rebuttal disclosures or request for *Daubert*

22   motions will be submitted on or before November 11, and we'll

23   hold the *Daubert* hearing at or in the same week as the final

24   pretrial conference on November 19.  I say possibly in the same

25   week because I don't know what the parties are going to be

OAABSTOA

1  submitting to me, so I don't know whether this can all be done

2  in one afternoon or requires multiple afternoons.  I have here

3  really thoughtful stuff about the advice of counsel defense,

4  but I'll stop because the parties have made agreements on it.

5  I'll just say this, please, and I'm sure that this is just me

6  being unnecessarily worried.  When I'm using the term "advice

7  of counsel defense," what I'm really speaking about are two

8  things.  And one of them is the formal advice of counsel

9  defense that's noted in cases like *Bilzerian* and that requires

10  certain disclosures by the defense and certain findings by the

11  court before such a defense can be raised.

12         But I'm also talking about cases in which someone is

13  arguing that the presence of lawyers or their participation in

14  meetings might impact a defendant's intent.  So when I'm asking

15  for advice of counsel disclosures on or before October 28, what

16  I'm really talking about is any reference to counsel being

17  present, being in the room, and any arguments that you make

18  from that.  I just say that because while I'm familiar, very

19  familiar with the advice of counsel defense, I've had instances

20  in which litigants have wanted to just do this variant of

21  advice of counsel.  And I've read a recent decision from Judge

22  Kaplan in the *Bankman-Fried* litigation.  And there contained at

23  2023 WL 6392718 and 2024 WL 477043.  And I take his point about

24  the, perhaps the near co-extensiveness of both formal and

25  informal advice of counsel.  But I'm really telling you this

OAABSTOA

 1   because I don't want to be surprised at trial.  So if we're

 2   going to talk about lawyers, please tell me before trial.  All

 3   right.

 4          Let me just say this one other thing.  And, you know,

 5   I wrote this earlier today before we had this very congenial

 6   conversation.  So I'm going to just give this to you and hope

 7   that it is already dated even as I say it.  Here's what I

 8   wrote.  I'm ending with this thought, which like a few others

 9   I've expressed this afternoon may not be something that anyone

10   asked for.  This case is an interesting case.  This is an

11   important case, and I'm just one person thinking about this.  I

12   think it's a triable case.  My concern about this most recent

13   round of motion practice is that the parties are planning to

14   engage in a trial by ambush in the hopes of either gaining some

15   advantage from the jury or gaining some advantage from me by

16   making it more difficult for their advisory to respond.  And my

17   thought to you here is that I don't think you need to engage in

18   litigation with parlor tricks.

19          And I'll say on this point that if you make life a

20   little bit more difficult for your adversary, if you give them

21   less time to look at something, I care less about that.  What I

22   really care about is that you're not going to give me enough

23   time to think about these issues, and you're not going to give

24   me enough time to arrive at a correct decision on your

25   applications.  I also actually don't think that late breaking

OAABSTOA

1   changes in strategy or gotcha moments actually really help

2   anyone for trial fortune turn around.  It didn't work for

3   Mr. Bankman-Fried for instance.  I'm asking you to play well

4   with each other as best you can.  And I'm asking you to spend

5   maybe a little bit less time on strategic thinking and a little

6   more time on the substance of the case.  But perhaps today is

7   the conversation we needed to air things out.  Perhaps today we

8   realize we can work together, and we can focus on the really

9   important substantive issues that are going to take place in

10   this trial.  And that really is my hope.  But for now, I

11   resolve the motions that I have in front of me.  I don't think

12   there are open issues.  But, Mr. Rehn, let me ask you now if

13   there are from your perspective?

14        MR. REHN:  Not from our perspective at this time, your

15   Honor.  Thank you.

16        THE COURT:  Okay.  And, Mr. Klein, any from your

17   perspective at this time?

18        MR. KLEIN:  No, your Honor.

19        THE COURT:  Okay.  Then I will let you go forth and

20   continue to prepare for this trial.  I am assuming that we are

21   having a trial on December 2nd.  You'll of course let me know

22   if that changes.

23        Thank you all very much.  Thank you.  Genuinely, thank

24   you for the comprehensiveness of your submissions, and for the

25   argument that you made to me which I really feel covered the

OAABSTOA

1  landscape.  I really appreciate that.  We'll talk again as

2  needed.  We are now adjourned.  Thank you.

3          (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2024, a copy of this Petition was filed electronically using the Court's ACMS system. In addition, I hereby certify that a copy of the Petition was served on the following by overnight mail and electronic mail (to counsel):

> Assistant United States Attorney Nathan Rehn
> Assistant United States Attorney Benjamin Arad
> Assistant United States Attorney Benjamin Gianforti
> United States Attorney's Office
> Southern District of New York
> 26 Federal Plaza, 37th Floor
> New York, NY 10278
> nathan.rehn@usdoj.gov
> ben.arad@usdoj.gov
> benjamin.gianforti@usdoj.gov
>
> Trial Attorney Kevin Mosley
> Department of Justice
> 1400 New York Avenue, N.W.
> 10th Floor
> Washington, DC 20530
> kevin.mosley@usdoj.gov
>
> The Honorable Katherine Polk Failla
> United States District Judge, Southern District of New York
> Thurgood Marshall U.S. Courthouse
> 40 Foley Square, Room 2103
> New York, NY 10007

Dated: October 16, 2024

*/s/ David Patton*
David Patton

*Attorney for Roman Storm*