**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 24-2742 _____ Caption [use short title]

Motion for: Emergency Motion for Stay Pending Petition

for Writ of Mandamus and for Expedited Review of

Petition.

In re: Roman Storm

Set forth below precise, complete statement of relief sought:

Petitioner requests on an emergency basis stay pending

petition for writ of mandamus and expedited review of petition.

Petitioner seeks relief from an October 10, 2024 order to

disclose expert witnesses on November 4, 2024 without

the Petitioner-Defendant first requesting disclosure under Fed.

R. Crim. P. 16. Trial is set to begin on December 2, 2024.

MOVING PARTY: Roman Storm                OPPOSING PARTY: United States

☐ Plaintiff   ☑ Defendant

☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: David E. Patton          OPPOSING ATTORNEY: Danielle Sassoon; Nathan Rehn

[name of attorney, with firm, address, phone number and e-mail]

HECKER FINK LLP                          United States Attorney's Office for the Southern District of New York

350 Fifth Avenue, 63rd Floor, New York, NY 10118    26 Federal Plaza, 37th Floor, New York, NY 10007

(212) 763-0883 dpatton@heckerfink.com    (212) 637-1115 danielle.sassoon@usdoj.gov; nathan.rehn@usdoj.gov, 212-637-2354

Court- Judge/ Agency appealed from: Southern District of New York, Honorable Katherine Polk Failla

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1)?
☑ Yes   ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes   ☐ No   ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☑ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☑ No

Requested return date and explanation of emergency: October 30, 2024
The Southern District of New York has ordered the parties to exchange expert disclosures on November 4, 2024. Given this impending deadline, we request an emergency stay to allow the court to consider the petition for writ of mandamus and for expedited review of petiton.
_____

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

_____ Date: 10/18/2024    Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

No. 24-2742

---

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

---

## IN RE: ROMAN STORM

---

**PETITIONER ROMAN STORM'S MOTION FOR EMERGENCY STAY
PENDING PETITION FOR WRIT OF MANDAMUS
AND FOR EXPEDITED REVIEW OF PETITION**

---

**WAYMAKER LLP**
Brian E. Klein*
bklein@waymakerlaw.com
Keri Curtis Axel*
kaxel@waymakerlaw.com
Becky S. James*
bjames@waymakerlaw.com
Kevin M. Casey*
kcasey@waymakerlaw.com
Viviana Andazola Marquez*
vandazolamarquez@waymakerlaw.com
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

**HECKER FINK LLP**
David E. Patton
dpatton@heckerfink.com
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

Attorneys for Roman Storm
*Admissions in process

## MOTION FOR EMERGENCY STAY PENDING PETITION FOR WRIT OF MANDAMUS AND FOR EXPEDITED REVIEW OF PETITION

Pursuant to Federal Rule of Appellate Procedure 8, Petitioner-Defendant Roman Storm respectfully requests an emergency stay pending his petition for a writ of mandamus from an order entered on October 10, 2024 by the Honorable Katherine Polk Failla in *United States v. Roman Storm,* Case No. 23 Cr. 430 (KPF), in the Southern District of New York. (*See* Dkt 1.1 (the "Petition").) Petitioner also respectfully requests expedited review of the Petition.

The district court, under its purported inherent authority, ordered the parties to make pretrial expert witness disclosures, including the substance of the anticipated expert testimony, even though the defense had not made a request for expert witness disclosures from the government under Federal Rule of Criminal Procedure 16 ("Rule 16").[1] Because Petitioner's defense relies heavily on expert witness testimony, the district court's order would have the effect of revealing his defense strategy before the government is required to present its case against him. This is particularly problematic because Petitioner may choose not to call certain experts or to significantly curtail the scope of their testimony depending on the government's case-in-chief, yet he will nonetheless be forced to reveal what would otherwise be confidential and constitutionally-protected information. That is

---

[1] A transcript of the district court's oral ruling is attached as Exhibit A.

1

precisely the harm Congress and the Judiciary sought to avoid in structuring the conditional nature of Rule 16's reciprocal expert disclosure obligations, a harm that has only magnified since the 2022 amendments to Rule 16 and the expansion of the substantive disclosure requirements. (*See, e.g.*, Petition at 13-17, 34.)

Because the district court ordered the parties to exchange expert witness disclosures by November 4, 2024, the status quo leaves this Court little time to consider the Petition. As set forth in the Petition, Petitioner would suffer irreparable harm if the order is not stayed.

All parties have been given notice of the motion. Petitioner sought consent from the government to stay the order in the district court to afford this Court time to consider the Petition.[2] The government stated its opposition to the request, and on October 14, 2024, Petitioner sought a stay from the district court pending resolution of his Petition.[3] On October 16, 2024, the government filed an opposition to the stay in the district court. The following day, the district court denied Petitioner's request, noting that "Mr. Storm can seek, and should seek, expedited treatment of his mandamus petition from the Second Circuit."[4]

---

[2] A copy of the parties' correspondence regarding Mr. Storm's request for a stay in the district court is attached as Exhibit B.

[3] A copy of the defense's letter requesting a stay from the district court is attached as Exhibit C.

[4] A copy of the district court's memo endorsement of the government's opposition to the defense's request and denying Petitioner's request for a stay is attached as Exhibit D.

The defense approached the government for its position on the emergency motion for a stay before this Court, and the government responded that it opposes the motion and intends to file an opposition.[5]

The following factors are considered in deciding whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *S.E.C. v. Citigroup Glob. Mkts Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (internal citations and quotations omitted). Petitioner meets all four factors.

***First***, as detailed in the Petition, Petitioner has made a strong showing that he is likely to succeed on the merits. (*See, e.g.,* Petition at 24-35.) The district court exceeded its authority when it ordered the defendant to reveal the substance of anticipated defense expert witness testimony in the absence of a request for government expert witness disclosures in direct conflict with Rule 16(b). *See, e.g.*, *Dietz v. Bouldin,* 579 U.S. 40, 45 (2016) ("[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute.").

---

[5] A copy of the parties' correspondence regarding Petitioner's request for an emergency stay before this Court is attached as Exhibit E.

***Second***, as also detailed in the Petition, Petitioner will be irreparably injured by the disclosure of confidential defense strategy before this Court is able to rule on his Petition because his defense depends largely on expert testimony, but the experts he ultimately calls, and the scope of their testimony, depends on the government's case-in-chief. (*See, e.g.*, Petition at 18-24.) Under the district court's order, upon pain of having his expert witnesses excluded, Petitioner must reveal, among other things, "a complete statement of all opinions that [he] will elicit from the witness in [his] case-in-chief" – even from experts he may never call. *See* Fed. R. Crim. P. 16(b)(1)(C)(iii). Once his defense strategy is revealed, he cannot redress his injury either by this Petition or in a post-judgment appeal. As this Court observed in *In re City of New York*, "a remedy after final judgment cannot unsay the confidential information that has been revealed." 607 F.3d 923, 934 (2d Cir. 2010).

***Third***, the issuance of the stay will not injure the prosecution. Granting the stay would simply maintain the status quo existing before the district court's order. *Citigroup Glob. Mkts. Inc.*, 673 F.3d at 168 (finding that no risk of injury to the interested parties existed because the stay had the effect of maintaining the status quo prior to the district court's order). Furthermore, the government itself failed to identify any risk of harm in its letter to the district court opposing Petitioner's stay

4

request.  (*See* Ex. D (failing to identify any injury to the prosecution in its argument against a stay).)

***Finally***, the public interest lies in resolving the important question of whether a district court may enforce an order that contravenes an explicit rule meant to safeguard constitutional rights, *before* the order causes irreparable harm in a criminal proceeding where a defendant's liberty is at stake.  As the Supreme Court explained in *Bank of Nova Scotia v. United States* addressing the importance to the public interest of a similar question presented:  "[e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions" and that allowing otherwise "would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing."  487 U.S. 250, 254 (1988) (first quoting *Thomas v. Arn,* 474 U.S. 140, 148 (1985), then *United States v. Payner,* 447 U.S. 727, 737 (1980)) (internal quotations omitted).

The reasons for granting the emergency stay and the facts relied on, including relevant parts of the record, are contained in the Petition.  As explained in the Petition and *supra*, if a stay were not granted and this Court were not able to rule on the Petition before disclosure, the prejudice to the Petitioner would be irreparable.  The government would learn critical aspects of the defense strategy and the bell could not be unrung even were Petitioner to succeed in his challenge.

5

Petitioner is on bond and remains in full compliance with the terms and conditions of his pretrial release.  Any time this Court spends considering the petition for a writ of mandamus is excludable time under 18 U.S.C. § 3161(h)(c).

DATED:  October 18, 2024  HECKER FINK LLP

        By: _____

          DAVID E. PATTON
          *Attorneys for Roman Storm*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 1262 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(d)(2). I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface, 14-point Times New Roman font.

DATED:  October 18, 2024

By: _____
     DAVID E. PATTON

# EXHIBIT A

```
OAABSTOA
```

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          23 Cr. 430 (KPF)

 5   ROMAN STORM,

 6

 7            Defendant.

 8                                        Oral Argument
     ------------------------------x
 9
                                          New York, N.Y.
10                                        October 10, 2024
                                          4:00 p.m.
11

12   Before:

13

14                    HON. KATHERINE POLK FAILLA,

15                                        District Judge

                              APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  NATHAN M. REHN II
          KEVIN MOSLEY
19        BENJAMIN A. GIANFORTI
          BEN ARAD
20        Assistant United States Attorneys

21   WAYMAKER, LLP
          Attorneys for Defendant
22   BY:  BRIAN E. KLEIN
          KEVIN CASEY
23        KERI AXEL

24   HECKER FINK, LLP
          Attorneys for Defendant
25   BY:  DAVID E. PATTON

                SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

OAABSTOA

OAABSTOA

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government,

3     counsel, note your appearance.

4          MR. REHN:  Good afternoon, your Honor.  This is Than

5     Rehn appearing for the United States.  I'm joined here in my

6     office by Ben Gianforti.  We also have on the line Kevin Mosley

7     and Ben Arad.

8          THE COURT:  Thank you, and good afternoon to each of

9     you.  And representing Mr. Storm, do I have Mr. Klein and

10    others?

11         MR. KLEIN:  Good afternoon, your Honor.  Thank you

12    again for accommodating us with the telephonic conference.  You

13    have myself, Keri Axel Kevin Casey, and we also have David

14    Patton.  He's dialed in.  He couldn't get into this line, but

15    he won't be speaking, but he's also listening in.  And we also

16    have our client who's dialed in Mr. Storm.

17         THE COURT:  Thank you very much, and good afternoon to

18    each of you.  Mr. Klein, you sort of suggested this in your

19    response to me, but I believe that you and your client have

20    discussed his right to have this proceeding take place in

21    person and that he is waiving that right?

22         MR. KLEIN:  That is correct, your Honor.

23         THE COURT:  Let me please confirm that with Mr. Storm.

24    May I speak with him directly, Mr. Klein?

25         MR. KLEIN:  Yes.

OAABSTOA

1    THE COURT:  Thank you.  Mr. Storm, first of all I want

2    to be sure you can hear us this afternoon.  Can you, sir?

3    THE DEFENDANT:  Good afternoon, yes.  Yes, I can hear

4    you well.

5    THE COURT:  Okay.  Good. My deputy also advises me

6    just if you're wondering that there are also eight listen only

7    participants on this conference as well.  I just want to make

8    sure that's there for the record.  Mr. Storm, your attorney and

9    I have been speaking and as happened at a prior conference of

10   ours, I believed it was easier for everyone to participate

11   telephonically just given the distance folks would have to

12   travel.  Mr. Klein advises me that you and he have discussed

13   the matter, that you're aware of your rights to have this

14   proceeding take place in person; and that you are consenting or

15   waiving your right to have it take place in person and

16   consenting to a telephonic proceeding.  Is all of that correct,

17   sir?

18   THE DEFENDANT:  Yes, that's all correct.  Thank you.

19   THE COURT:  Mr. Storm, thank you for letting me know.

20   Friends, I've been thinking about everyone's submissions.  I've

21   been doing a lot of talking with a lot of other judges.  And I

22   mentioned I did have a few questions that I'd like to ask the

23   parties just to fill in some gaps that I have, or perhaps to

24   dispel some misimpressions that I have, so let me do that. And

25   then depending on your answers, I will either have the ability

5

OAABSTOA

1    to give you a decision immediately, or I might need a little

2    bit of time.  So let's hope for the former.  Thank you.

3         Mr. Rehn, I'm told I should be directing government

4    inquiries to you.  Is that correct, sir?

5         MR. REHN:  Yes, your Honor.

6         THE COURT:  Perhaps I am misreading the parties'

7    submissions, but there was a suggestion in the defense

8    submission that the government is taking a very textualist

9    approach to the Jencks Act, and that they're planning on not

10   producing 3500 material until after the witness' testimony.  Is

11   that correct or have I just misunderstood?

12        MR. REHN:  No, your Honor.  We've been I think as we

13   say in our letter attempting to have a discussion with them

14   across a range of issues.  And as part of that discussion, we

15   have expressed a willingness to produce materials pursuant to

16   Section 3500 in advance of trial.  And have hopes that that

17   would be part of an agreed upon agreement as to all pretrial

18   disclosures.  Because we haven't been able to reach that

19   agreement, we haven't yet decided the timing for those

20   disclosures in particular.

21        THE COURT:  And I guess I understand that a little

22   better than I did a moment ago.  Is it actually the

23   government's contemplation -- if I can use the Failla parlance,

24   is there a world in which you would not produce 3500 material

25   until after the witness testified?

6

OAABSTOA

1          MR. REHN:  That is very much not our practice, so I

2     don't expect that would be the world that we would anticipate

3     going into the trial.  I do think the timing of those

4     disclosures is something we frequently include in our

5     discussions with defense counsel about a range of hoped for

6     agreed upon pretrial disclosures.  And so the precise timing of

7     those disclosures is something that we are continuing to

8     include in our discussions with defense counsel.

9          THE COURT:  I see.  The way I'm looking at it,

10    Mr. Rehn, we're here.  You're talking to me because you haven't

11    worked that out.  Is it possible that I could suggest a

12    production schedule of 3500 material to the parties?

13         MR. REHN:  There's precedent in the Circuit that says

14    that Rule 3500 is not something that the government can be

15    ordered to do in advance of the specific time that's set forth

16    in the statute.

17         THE COURT:  And please, sir, let me be very clear

18    about the question I asked you.  That's exactly why I use the

19    term "suggest." I'm familiar with *In Re United States*, 834 F.2d

20    283 from 1987 which tells me that, so I get it.  I guess what

21    I'm asking is, you're talking about negotiating things, but

22    there are some issues that I imagine that the parties or that

23    the parties do want me to resolve.  Is it your contemplation

24    that after I resolve the issues of expert witness disclosures

25    and advice of counsel disclosures, that then the parties are

OAABSTOA

1    going to negotiate the 3500 material?

2            MR. REHN:  Your Honor, I think the position we've

3    articulated in our letter, it reflects our view that the best

4    thing to do is figure out a way to have pretrial disclosures to

5    facilitate the efficient presentation of evidence at trial

6    without unnecessary interruptions.  And my expectation is that

7    we will produce 3500 material in a manner that allows for that

8    after the Court resolves our issues relating to the expert

9    disclosures.

10           THE COURT:  Okay.

11           MR. REHN:  And our usual practice would be to produce

12   it in advance of trial.

13           THE COURT:  Yes, I know.  Again, I am aware of Second

14   Circuit precedent on this issue, that's why I'm couching in

15   terms of suggestion or a request.  I will say I don't know that

16   I knew, or at least did not focus on this idea that a judge

17   couldn't order earlier disclosures.  Because heaven knows, I've

18   both ordered and been ordered to produce things earlier.  I

19   don't remember your office invoking *In Re United States* cases

20   of that type previously, but we all know that they are there.

21           Mr. Rehn, that actually leads me to my next question

22   which is this:  As I understand, the decision, the *In Re United*

23   *States* decision from 1987, what it stands for is the

24   proposition that a court's inherent power does not trump the

25   production schedule or the production deadline that's listed in

OAABSTOA

1    the Jencks Act, such that a district court lacks the power to

2    order production on an earlier timetable.  Perhaps I'm

3    overstating the issue, but that's how I'm looking at it.  If

4    you hold that same view of the case, could you help me

5    understand how I can reconcile the inherent power I have or

6    don't have to order early 3500 material disclosure with the

7    inherent power I have or don't have to order disclosure of

8    expert witness disclosures under Rule 16 without the triggering

9    event of the defense making a request for them?

10            MR. REHN:  Yes, your Honor.  So first off the issue of

11   the Court ordering pretrial expert disclosures is, as far as we

12   can tell, an issue of first impression, not just in this

13   district, but in this Circuit.  So unlike with respect to 3500,

14   there's no binding precedent on this issue from any prior

15   court.  There are some decisions from other district courts

16   that are cited in the parties' letters.

17            THE COURT:  Yes.

18            MR. REHN:  But I think the core principle here is that

19   there's Rule 16 in the Federal Rules of Criminal Procedure

20   which does provide for certain provisions for pretrial

21   disclosures.  And in addition to that, the actual presentation

22   of evidence at trial is governed by the Federal Rules of

23   Evidence which include Rule of Evidence 702.  And under Rule of

24   Evidence 702, the Court has an inherent gatekeeping authority

25   pursuant to the Supreme Court's decision in *Daubert* and *Kumho*

OAABSTOA

*Tire* and has discretion in determining how to exercise that

gatekeeping authority.  What we're simply saying is that

there's basically apparently two ways that are being proposed

here for the Court to exercise its gatekeeping discretion.  One

which would involve resolving evidentiary objections to expert

testimony shortly in advance of trial, and one which would

involve a potentially lengthy mid-trial adjournment, possibly

multiple mid-trial adjournments to allow the parties to review

and respond to each other's disclosures; and then present any

potential objections to the Court at that point in time.

And we would suggest that the Court should exercise

its discretion that is clearly afforded it pursuant to the

*Daubert* line of cases to order that proceeding in such a way to

avoid that sort of a mid-trial adjournment.  And the law does

contemplate that the trial court has discretion to decide when

and how to address expert objections.

THE COURT:  Let me ask a question in the 702 vein.

You're familiar with -- and this may sound a little bit

over-academic.  That's the appellate lawyer in me, so please

excuse me.  You're familiar, sir, with the concept of the if,

as or when subpoena?

MR. REHN:  Yes, your Honor.

THE COURT:  If the government filed a *Daubert* motion

expressing concern about the reliability or about the

admissibility of Mr. Storm's contemplated expert testimony,

OAABSTOA

1   which as yet has not been foreshadowed or introduced.  Do you

2   believe that I would have the power to order them to disclose

3   sufficient information to allow me to make findings under Rule

4   702, under perhaps Rule 403, and under the *Daubert* line of

5   cases, is that the argument that you're making to me now?  That

6   you could today file a motion saying, we are worried that this

7   stuff may not be admissible; therefore, we're asking to require

8   them to disclose it and to set a schedule for a *Daubert*

9   hearing, or do you think it's something I can do sua sponte or

10  both?

11       MR. REHN:  Well, I think that's what we're essentially

12  saying in our letter motion.  I don't think we currently have

13  an articulable basis to object to expert testimony in the

14  contents of which we don't know.  And so we're aware from our

15  conversations with defense counsel that they are contemplating

16  certain experts.  We're aware from the motions they filed in

17  the case that that is likely to involve technical issues

18  relating to things like cryptocurrency, transactions, computer

19  software, issues that involve quite a bit of work to even

20  understand for a lay person like myself usually with the help

21  of our own experts to try to figure these issues out.

22       And so in order to be able to -- for both parties to

23  be able to review the disclosures, decide whether there are

24  things that aren't proper expert testimony, and then explain

25  them in briefing to the Court, and for the Court then to have

OAABSTOA

1    the opportunity to rule on those would take a reasonable amount

2    of time.  Even a 24-hour adjournment in the midst of trial I

3    don't think would probably be enough to do that level of work.

4    And so what we're saying is, in light of the clear anticipated

5    complicated expert testimony that's at issue in this case, it's

6    an appropriate case for the Court to exercise discretion to

7    have those proceedings take place in advance of the time the

8    jury is sworn.

9            THE COURT:  Do you think, sir, my authority rises, if

10   at all, from the Federal Rules of Evidence and not from Rule 16

11   and not from my inherent powers; or do you think it's a

12   combination?  By the way, I'm not saying I agree with you.  I

13   just want to make sure I understand the point.

14           MR. REHN:  I think we take the point that is raised by

15   defense counsel that the specific aspects of Rule 16 that

16   require disclosures are triggered by defense request for

17   disclosures.  But we do think that the underlying purpose of

18   Rule 16 clearly contemplates that what the advisory committee

19   was trying to do was avoid mid-trial surprise, and ensure that

20   fair and efficient presentation of evidence for the jury.  And

21   so it should be considered in accordance with the Federal Rules

22   of that Evidence that are going to govern this expert

23   testimony.  And under those rules of evidence, there's I don't

24   think any question that the trial court does have discretion to

25   decide in the words of the Supreme Court in the *Kumho Tire*

OAABSTOA

1  decision, 526 U.S. at 152 "whether or when special briefing or

2  other proceedings are needed to investigate reliability."  And

3  so there is an avenue under Rule 702 to set the trial

4  proceedings up in such a way so that the Court is best

5  positioned to exercise the gatekeeping authority without

6  creating a problem with a mid-trial adjournment.

7          THE COURT:  Okay.  Thank you.  Just one moment,

8  please.  Mr. Rehn, your adversary has suggested that there's

9  nothing that prevents the government from disclosing the expert

10 testimony and information on its own.  I presume you're just

11 going to tell me that yes you can, but you would much prefer to

12 disclose it in some sort of negotiated resolution with the

13 defense.  Yes?

14         MR. REHN:  Yes, or a schedule ordered by the Court.  I

15 think there are considerations of fairness that have to be

16 taken into account, along with conditions considerations of

17 efficiency.

18         THE COURT:  Okay.  Thank you.  Mr. Klein, could I hear

19 from you, sir.  I have a little better sense now about the

20 government's perspective on the 3500 material.  Would you

21 please engage in the discussion I was just having with counsel

22 about the Federal Rules of Evidence recognizing, sir, that

23 perhaps similar arguments may have been made to the judge in

24 Washington?

25         MR. KLEIN:  Your Honor, I think Rule 16 is very clear

OAABSTOA

1    and was crafted in a way that is clear, and that Rule 702 even

2    read that way doesn't trump it, otherwise it would drive a hole

3    through the rule.

4            THE COURT:  Okay.  Is there anything -- and, sir, that

5    was really -- I have candidly more questions for the government

6    than I have for the defense.  But if there's anything else

7    you'd like to comment on based on the conversation I had with

8    Mr. Rehn, please tell me now?

9            MR. KLEIN:  Two things.  One is, the government did

10   tell us they weren't going to give 3500 material unless we gave

11   defense expert disclosures, and that was the real hangup in our

12   negotiations.  We really do and have consistently wanted a

13   holistic schedule as I think you saw in our letter.  But the

14   second point is, there's one point for consideration you

15   haven't touched on is the advice of counsel disclosure.  And I

16   think we noted that there's an issue of fairness there if the

17   3500 materials aren't being handed over.  We've been working

18   diligently on a set team as a defense.  And sort of in light of

19   sometime that has past, some discovery and us delaying I think

20   makes one amendment to our request in our letter that 404(b)

21   and advice of counsel, we'd be given two additional weeks until

22   October 28.

23           In our letter we had put in October 14, which is next

24   week, so that's actually this coming Monday.  So I just wanted

25   to note that our request now is that the schedule would be as

OAABSTOA

1  outlined in our letter, but with the October 14th date moved to

2  October 28.

3         THE COURT:  Just so that I'm clear, sir, you'd be

4  willing to produce advice of counsel and 404(b) notice only if

5  the entirety of your schedule is adopted as well, sir.  Am I

6  correct?  Let me be more pointed.  Okay.  Let's say that I am

7  not ordering production one month in advance of 3500 material.

8  Are you still willing to give early notice of the advice of

9  counsel or not?  I'm fine either way.

10        MR. KLEIN:  I think we would need to think about that,

11  your Honor.  Again, our contemplated schedule is November 8.  I

12  think we would want -- and again, as we noted at the end, it's

13  sort of an issue of fairness.  And I think we felt our schedule

14  that we proposed balances competing concerns by both parties,

15  but also giving everybody time to review and analyze stuff.  So

16  if the government is only suggested to produce 3500 or only

17  ordered, however it's phrased a week or two in front of trial,

18  we would want sufficiently more time to assess our advice of

19  counsel defense.  So maybe that's not as a direct answer you

20  would like, but I just --

21        THE COURT:  Well, you're exactly right.  It's not as a

22  direct answer as I would like. For me, sir, the issue is this.

23  I disagree with the defense's effort to link 3500 material and

24  advice of counsel defense.  I don't see them as joined at the

25  hip as you do.  That doesn't mean that I'm not going to ask the

OAABSTOA

 1  government to produce it early.  Although as you've heard

 2  Mr. Rehn tell me gently, I don't have the authority to order

 3  it.  But I am not conditioning the advice of counsel disclosure

 4  on the 3500 material, that's not something that I plan to do in

 5  resolving this.  You'll see in a few moments because I need a

 6  few moments to think about what you all just told me, and I

 7  will then give you my decision.  But you'll see I have

 8  uncoupled 3500 material and advice of counsel.

 9          MR. KLEIN:  We would still ask for October 28 for the

10  advice of counsel defense. If the government's not going to be

11  producing -- even we understand your Honor is not coupling

12  them, we still view them as coupled respectfully.  And we would

13  ask for additional time past the 28th, so that's our position.

14          THE COURT:  Okay.  And let me say this as well, let's

15  talk about what we maybe agree on, which by the way may not be

16  much.  On page three of your letter, your September 25th

17  letter, sir, there are certain things that are bold, and those

18  are things that I ordered.  Obviously I don't plan on changing

19  the things that I have ordered, although I'll listen to the

20  parties if I needed to.  It was my contemplation that the

21  404(b) disclosures would be made in the motions *in limine*, that

22  I hear about it first in the motions *in limine*, parties seeking

23  to produce 404(b) evidence would do in the motions *in limine*.

24  And then I get the opposition one week later telling me why

25  that shouldn't happen.

OAABSTOA

1      So while you're asking for the 28th of October for

2    that disclosure, in my mind it was going to be disclosed on the

3    4th of November.

4      MR. KLEIN:  Your Honor, one point with that, sometimes

5    it's helpful, and the reason why we asked for it a little

6    earlier is sometimes we're able to negotiate a resolution of

7    the 404(b) issues that prevent the need for 404(b) motions.  So

8    that is one reason we contemplated it early.  I've had that in

9    the past with the government where they notice something.  You

10   talk about it with them, and then you reach an agreement so

11   your Honor doesn't have as many motions in front of the court.

12   That's one reason we put it in.

13     THE COURT:  Well, Mr. Rehn, opposition to that

14   friendly moment, sir.

15     MR. REHN:  It was also our view -- and generally it's

16   the practice that we would do the 404(b) as part of the motions

17   *in limine*, but I don't know if we're necessarily opposed to a

18   disclosure somewhat in advance of that.

19     THE COURT:  Well, one week in advance of that

20   suggest -- the reason to do it, which I know you know, is that

21   if you can agree on it, then you don't have to write me a

22   motion, and then I don't have to decide a motion.  That's not a

23   crazy thing, so I'm okay with that.  But wait.  Mr. Klein, does

24   that mean that you're also disclosing advice of counsel on that

25   day, or is that something you're still thinking about, sir?

OAABSTOA

1    MR. KLEIN:  Your Honor, that would be October 28.

2    Just to be clear, we were requesting October 28, for both of

3    those.  Now again, I'm not trying to be difficult with the 3500

4    on November 8th, but again we do see the benefit -- and I just

5    outlined it too, of getting 404(b) at least a week in advance

6    so we can try to work out a resolution and avoid unnecessary

7    motions.  Sounds like we have agreement with the government.

8    THE COURT:  Okay.  Let me be more explicit then with

9    what I was just saying.  Earlier in this conversation you said

10   to me that your thought was -- and indeed, in your letter it

11   was originally October 14th, but it is now October 28 -- the

12   idea of disclosing 404(b) and the advice of counsel defense.  I

13   believe that we just agreed -- and if not, I can order it --

14   that the government and you -- well, I guess really the

15   government -- provide 404(b) notice by the 28th of October.  So

16   that you've got.  And then we've got our motions.  Otherwise

17   the November 4th, November 11, November 19th dates remain the

18   same.  I guess I'm asking whether having negotiated that

19   resolution, you're willing to disclose advice of counsel on the

20   28th of October, or whether you want to hear more from me

21   before you make that decision?  I just want to know.

22   MR. KLEIN:  Your Honor, in light of that, I think we

23   will agree to the advice of counsel on the 28th; but again,

24   with the idea that the government will be producing 3500

25   sufficiently in advance of trial, whether you give us the date

18

OAABSTOA

 1  we ask for, which we think is appropriate for fairness.  So I

 2  think we are finding common ground here.

 3       THE COURT:  Okay.  Well, I'm sad for the amount of

 4  time we spent looking at advice of counsel defense, but if I

 5  can bring the parties to a negotiated resolution all the

 6  better.  All right.  Mr. Rehn, still there, sir?

 7       MR. REHN:  Yes, your Honor.

 8       THE COURT:  Okay.  Mr. Rehn, we now have a date of

 9  October 28th for the 404(b) notice and the advice of counsel

10  disclosure.  We've got -- otherwise my dates are set.  Do you

11  have a thought about 3500 material, sir?  Because, remember,

12  we've been talking about negotiation, but that's sort of what

13  we've devolved to doing in this call.  Do you have a position,

14  or are you still thinking about that, sir?

15       MR. REHN:  Your Honor, I think in light of this

16  discussion, we do intend to produce the 3500 material in

17  advance of trial.  I think the 8th would be a challenge just

18  given the number of other things that are going to be done that

19  week.  So I would ask for probably the -- when I say ask, I

20  would sort of propose that we would plan on producing it more

21  like the following Wednesday or something.

22       THE COURT:  Okay.  All right.  The 13, November 13th,

23  for 3500.  That actually sounds great to me.  And Mr. Klein is

24  not going to tell me that he objects because that is fair.

25  What about the exhibit and witness list from the 18th of

OAABSTOA

1    November, sir, is that something the government can do?

2             MR. REHN:  One moment, your Honor.

3             THE COURT:  Of course.

4             MR. REHN:  Your Honor, I think we can work with that

5    deadline.

6             THE COURT:  Okay.  All right.  So that means we have

7    many things resolved.  But, Mr. Klein, I'm going back to you,

8    sir.  You've gotten a lot of what you've asked for, which is

9    great.  Mr. Klein, what about expert witness disclosures?  Are

10   we still there?  Is that something I need to resolve, or are we

11   in a really conciliatory mood and you might propose something

12   with the government?

13            MR. KLEIN:  Your Honor, we had talked to them about

14   disclosures short of current Rule 16.  They've rejected those

15   each time we raise those.

16            THE COURT:  And I wouldn't ask them for that either.

17   I agree.  I don't think that that's not -- that won't cut it.

18   I guess is there otherwise, what, the plan is to just disclose

19   at trial?

20            MR. KLEIN:  So, your Honor, I think when we disclose a

21   witness list, we would have to put the name of an expert that

22   we might call in there just to be clear.  I think that is

23   something we would contemplate doing.  It's not voluntarily or

24   however you want to look at it, but I think our plan is to

25   stick with Rule 16.  Maybe in the meantime we are able to

OAABSTOA

negotiate something with the government.  We will continue to

try to do so.  To be clear, we're not giving up on that front,

so I don't know if they change their mind on this call.  But

maybe after this hearing we all have time to think about it,

we'll be able to reach a resolution.  That's what happened in

the Thompson case that was referenced in both our briefs.

THE COURT:  I'm familiar with Thompson.  Mr. Klein,

let me be more precise, sir, excuse me.  I think I was being a

little bit too oblique.  I have in front of me an oral decision

resolving the parties' dispute about Rule 16.  I can give it,

or I cannot give it because the parties are going to continue

to negotiate it.  If you're not today comfortable making a

commitment or continuing to negotiate with the government

regarding the disclosure in accordance with the current version

of Rule 16 in terms of the content, then I can proceed with the

oral decision, or I can give you more of a chance to speak.

The reason I'm asking, sir, is we were getting along so well

for a few minutes there, and I do believe ultimately this trial

is better if the parties can negotiate it.  But I want to give

you that option, but if that's where you are, then I'll give my

decision.

MR. KLEIN:  Your Honor, that's where we are.

THE COURT:  That's an answer and that is fine.  Then

let me do this, please.  Just give me a moment.  I have notes,

but I have notes that I'm sort of annotating in light of the

OAABSTOA

1    discussions we've been having today.  And I just want to be

2    sure that they've not been rendered dated by our discussions

3    today.  Okay.  I'll ask for everyone's attention.  I'll ask you

4    to please mute your lines, and I will beg your indulgence as I

5    read this into the record.  My intention this afternoon is not

6    to read into the record a lot of the applicable case law and

7    statutes and rules.  I know the parties know what they are.  I

8    don't think they aid the transcript to have me read them word

9    for word into the record, so I'll make reference to them, and

10   I'll be incorporating some of them by reference.

11          So I begin by thanking you, and I guess I have more to

12   thank you for than when we started this conversation because at

13   least part of this motion seems to have resolved itself,

14   although I'll talk about that in a little while.  So thanks for

15   that.  Let me tell you also that in anticipation of this

16   decision, the way that I approached it given the paucity of

17   case law in the issue was to reach out to a rather large number

18   of my colleagues here in the Southern District to discuss the

19   parties' competing views on these issues.  And I actually

20   received a fair amount of feedback from my colleagues which was

21   great for me.  And I analogize it -- again, this is the

22   appellate lawyer in me -- to like a mini *en banc* of Southern

23   District judges on these areas.

24          And as to some of the issues I'm going to discuss,

25   there was sort of a universal consensus.  As to others, what

OAABSTOA

1    I'm going to outline is my position in the majority view.  I'll

2    also let the parties know that I engaged in extensive

3    conversations with Judge Subramanian, who if you're wondering

4    was much less sanguine about the conduct of the Eisenberg trial

5    than defense counsel recalls; and who really would have

6    preferred to hashed out these issues in full in advance of

7    trial rather than mid-trial.  But I also had a very lengthy and

8    very helpful chat with Judge Liman, who's just a very smart man

9    as all of you know who did a lot of work on the advice of

10   counsel defense in the Ray case, but also had a lot of things

11   to say about Rule 16.  So my decision today involved and

12   incorporates the wisdom of those two judges and the others

13   judges with whom I've spoken.

14          So I understand and you understand that the rules at

15   issue here include Federal Rule of Criminal Procedure 16, in

16   particular Subsections (a)(1)(G) and (b)(1)(C).  I've looked at

17   the advisory committee notes, in particular the advisory

18   committee notes, the 1997 and 2022 amendments.  The parties, at

19   least the government, has suggested that Federal Rule of

20   Criminal Procedure 57 might assist me in its Subsection B.  And

21   I've looked at the Federal Rules of Evidence, and I focused

22   mostly on Rule 104, Rule 403, Rule 702, and some of the others

23   in the 700 series.  And the parties know what the parties'

24   positions are with respect to the timing of expert disclosures.

25   And I do and I want to underscore I appreciate everyone's

OAABSTOA

1  efforts to come to a holistic agreement on these issues because

2  it takes up less of everyone's time.  And so really I to

3  appreciate that.  And I also do appreciate the opportunity this

4  afternoon to speak with the parties about what they really were

5  intending to do and what their thoughts were.

6        As I suggested in my conversations with Mr. Klein, I

7  don't condition Rule 3500 material and the advice of counsel

8  defense.  I don't condition Rule 3500 material and expert

9  witness disclosures.  I think that that's a little bit

10 different, but I understand his position on it.  I have looked

11 at, as I mentioned, the case on the issue, the *Thompson* case

12 and the *Impastato* case that were cited to me, although

13 *Impastato* predates it.  I did reach out to a number of my

14 colleagues.  And I'll tell you that the majority of the

15 colleagues who responded to me actually were agreed or believed

16 that I had the authority under my inherent power to set a

17 timetable for disclosure.  And let me just put that a little

18 bit differently.  These judges felt that while Rule 16 set

19 forth the content of the disclosures and a mechanism for

20 ensuring the fairness of pretrial disclosures, that there came

21 a point in the trial process where the Court's inherent power

22 to control the progress of the trial, the Court's concerns

23 about not wasting jury time, the Court's need to schedule a

24 pretrial as distinguished from mid-trial hearings interest the

25 calculus.  The belief was that the trial judge's duty to

OAABSTOA

1    control the trial process so that the jury can render a just

2    verdict allowed the Court and indeed required the Court to set

3    schedules so that admissible evidence was presented in a timely

4    and efficient manner.

5           One of my colleagues wrote back to me and said

6    specifically, we can't let gamesmanship trump justice.  And so

7    I thought about my inherent powers, and I would love to just

8    very easily say that these judges are correct.  I also know

9    that the advisory committee notes at least suggest that a

10    criminal defendant could not strategically avoid his or her

11    obligation to make timely disclosures by avoiding actions that

12    trigger disclosure obligations until trial.  And by the way as

13    a parenthetical here, I can't believe that the rules committee

14    which was seeking to enhance the detail and the timeliness of

15    disclosures would have enshrined or wanted to enshrine such

16    gamesmanship.  But there's language in the advisory committee

17    notes that suggest that I can order disclosures in order to

18    ensure enforceable deadlines.  And that seems to me that I have

19    that power even where one of the parties was seeking to delay

20    triggering -- that party being the defense -- seeking to delay

21    triggering the disclosure obligation.  But that's where we are.

22    If it turns out that my colleagues are wrong, and I don't have

23    the inherent power to overcome the triggering import of Rule

24    16, let me say this:  I absolutely have other sources of

25    authority to obtain this information.  And here I agree with

OAABSTOA

1 the arguments that the government is making today about my

2 ability under the Federal Rules of Evidence.  And to me that

3 includes Federal Rules of Evidence 104 which obligates me to

4 decide certain preliminary questions of admissibility where

5 such hearings are often conducted prior to trial so that the

6 parties and the Court can understand the ground rules. I also

7 think that Rule 702 and the *Kumho Tire Daubert* line of cases do

8 require me to make preliminary findings regarding the

9 qualification of experts, the relevance of their testimony, and

10 the reliability of their testimony.  So I do believe I have the

11 authority to resolve these Rule 702 issues prior to trial.  And

12 the fact that the disclosures that would have to be made to

13 satisfy Rule 702 and Daubert, the fact that they're essentially

14 if they're not very similar to or identical to, they're very

15 close to what's specified in Rule 16 does not foreclose me from

16 ordering such a disclosure pretrial.

17          As a result, I am including expert witness disclosures

18 within the existing trial schedule.  Anyone seeking to present

19 expert testimony at trial must present disclosures in

20 accordance with the current version of Rule 16 on or before

21 November 4.  Any rebuttal disclosures or request for *Daubert*

22 motions will be submitted on or before November 11, and we'll

23 hold the *Daubert* hearing at or in the same week as the final

24 pretrial conference on November 19.  I say possibly in the same

25 week because I don't know what the parties are going to be

OAABSTOA

1    submitting to me, so I don't know whether this can all be done

2    in one afternoon or requires multiple afternoons.  I have here

3    really thoughtful stuff about the advice of counsel defense,

4    but I'll stop because the parties have made agreements on it.

5    I'll just say this, please, and I'm sure that this is just me

6    being unnecessarily worried.  When I'm using the term "advice

7    of counsel defense," what I'm really speaking about are two

8    things.  And one of them is the formal advice of counsel

9    defense that's noted in cases like *Bilzerian* and that requires

10   certain disclosures by the defense and certain findings by the

11   court before such a defense can be raised.

12          But I'm also talking about cases in which someone is

13   arguing that the presence of lawyers or their participation in

14   meetings might impact a defendant's intent.  So when I'm asking

15   for advice of counsel disclosures on or before October 28, what

16   I'm really talking about is any reference to counsel being

17   present, being in the room, and any arguments that you make

18   from that.  I just say that because while I'm familiar, very

19   familiar with the advice of counsel defense, I've had instances

20   in which litigants have wanted to just do this variant of

21   advice of counsel.  And I've read a recent decision from Judge

22   Kaplan in the *Bankman-Fried* litigation.  And there contained at

23   2023 WL 6392718 and 2024 WL 477043.  And I take his point about

24   the, perhaps the near co-extensiveness of both formal and

25   informal advice of counsel.  But I'm really telling you this

OAABSTOA

because I don't want to be surprised at trial. So if we're

going to talk about lawyers, please tell me before trial. All

right.

Let me just say this one other thing. And, you know,

I wrote this earlier today before we had this very congenial

conversation. So I'm going to just give this to you and hope

that it is already dated even as I say it. Here's what I

wrote. I'm ending with this thought, which like a few others

I've expressed this afternoon may not be something that anyone

asked for. This case is an interesting case. This is an

important case, and I'm just one person thinking about this. I

think it's a triable case. My concern about this most recent

round of motion practice is that the parties are planning to

engage in a trial by ambush in the hopes of either gaining some

advantage from the jury or gaining some advantage from me by

making it more difficult for their advisory to respond. And my

thought to you here is that I don't think you need to engage in

litigation with parlor tricks.

And I'll say on this point that if you make life a

little bit more difficult for your adversary, if you give them

less time to look at something, I care less about that. What I

really care about is that you're not going to give me enough

time to think about these issues, and you're not going to give

me enough time to arrive at a correct decision on your

applications. I also actually don't think that late breaking

OAABSTOA

```
 1    changes in strategy or gotcha moments actually really help
 2    anyone for trial fortune turn around.  It didn't work for
 3    Mr. Bankman-Fried for instance.  I'm asking you to play well
 4    with each other as best you can.  And I'm asking you to spend
 5    maybe a little bit less time on strategic thinking and a little
 6    more time on the substance of the case.  But perhaps today is
 7    the conversation we needed to air things out.  Perhaps today we
 8    realize we can work together, and we can focus on the really
 9    important substantive issues that are going to take place in
10    this trial.  And that really is my hope.  But for now, I
11    resolve the motions that I have in front of me.  I don't think
12    there are open issues.  But, Mr. Rehn, let me ask you now if
13    there are from your perspective?
14            MR. REHN:  Not from our perspective at this time, your
15    Honor.  Thank you.
16            THE COURT:  Okay.  And, Mr. Klein, any from your
17    perspective at this time?
18            MR. KLEIN:  No, your Honor.
19            THE COURT:  Okay.  Then I will let you go forth and
20    continue to prepare for this trial.  I am assuming that we are
21    having a trial on December 2nd.  You'll of course let me know
22    if that changes.
23            Thank you all very much.  Thank you.  Genuinely, thank
24    you for the comprehensiveness of your submissions, and for the
25    argument that you made to me which I really feel covered the
```

OAABSTOA

1   landscape.  I really appreciate that.  We'll talk again as

2   needed.  We are now adjourned.  Thank you.

3            (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

| | |
|---|---|
| **From:** | Rehn, Nathan (USANYS) <Nathan.Rehn@usdoj.gov> |
| **Sent:** | Monday, October 14, 2024 6:07 PM |
| **To:** | Brian Klein; Gianforti, Benjamin (USANYS); Arad, Ben (USANYS); Mosley, Kevin (CRM) |
| **Cc:** | Keri Axel; Becky James; Kevin Casey; Emily Stierwalt; David Patton; Nick Pavlis |
| **Subject:** | Re: Request for Stay |

This email was sent from outside the Firm.

Hi Brian,

We oppose your request for a stay.

Thank you,
Thane

Get Outlook for iOS

---

**From:** Brian Klein <bklein@waymakerlaw.com>
**Sent:** Monday, October 14, 2024 2:30 PM
**To:** Rehn, Nathan (USANYS) <NRehn@usa.doj.gov>; Gianforti, Benjamin (USANYS) <BGianforti@usa.doj.gov>; Arad, Ben (USANYS) <BArad@usa.doj.gov>; Mosley, Kevin (CRM) <Kevin.Mosley@usdoj.gov>
**Cc:** Keri Axel <kaxel@waymakerlaw.com>; Becky James <bjames@waymakerlaw.com>; Kevin Casey <kcasey@waymakerlaw.com>; Emily Stierwalt <EStierwalt@waymakerlaw.com>; David Patton <dpatton@heckerfink.com>; Nick Pavlis <npavlis@heckerfink.com>
**Subject:** [EXTERNAL] Request for Stay

DOJ team-

This Wednesday the defense plans to file a petition for a writ of mandamus from the Second Circuit to overturn the Court's October 10 ruling ordering pretrial expert disclosures. In advance of filing the petition, the defense plans to seek a stay from the Court of its October 10 ruling, filing the letter request later today. Please let us know by 7 pm ET today if you consent to our request for a stay so we can advise the Court of the government's position.

Thank you.

-Brian

Brian Klein
Trial Lawyer

WAYMAKER
Waymaker LLP
515 S Flower Street, Suite 3500, Los Angeles, CA 90071
+1 424.652.7814
bklein@waymakerlaw.com | waymakerlaw.com | vCard | Profile

# EXHIBIT C



Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

October 14, 2024

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>**By ECF**</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   <u>**United States v. Roman Storm**</u>
      **23 Cr. 430 (KPF)**

Dear Judge Failla:

      We write on behalf of our client Roman Storm to respectfully request a stay of the Court's October 10, 2024 oral ruling ordering reciprocal pretrial disclosures of expert witness information, with case-in-chief expert disclosures ordered for November 4, 2024 and rebuttal expert disclosures to follow seven days later on November 11, 2024. On Wednesday, October 17, 2024, Mr. Storm intends to file in the Second Circuit a petition for a writ of mandamus to overturn that ruling. The Second Circuit will need time to consider and decide the writ, and it will not likely be able to reach a decision before November 4, 2024. If a stay is not granted, then Mr. Storm would be forced to make his expert witness disclosures before trial without the benefit of the Second Circuit's decision on his mandamus petition. The government opposes this request for stay.

      A stay is warranted because the issue is novel and significant and is appropriate for appellate review on mandamus. The defense respectfully believes that the Court's ruling contravenes Federal Rule of Criminal Procedure 16(b)(1)(C), which on its face requires that the defense make a request for pretrial government disclosure of expert witness information and that the government comply before triggering any defense obligation to produce its expert witness disclosures. As the Court knows, the defense intentionally made no such request here. The defense is unaware of any other court decision ordering the disclosure to the government of defense expert witness information before trial under such circumstances, and there are a number of contrary decisions. The defense seeks to maintain the confidentiality of its expert witness information before trial because disclosure of such information would necessarily reveal confidential defense strategy and work product, and greatly prejudice Mr. Storm. If he were forced to make his expert witness disclosures before trial, even if he ultimately decided not to call certain or even all of his expert witnesses, this confidential and protected information would forever be revealed to the government, a harm which could not be adequately remedied on appeal from final judgment. A stay is necessary to ensure that Mr. Storm is given the opportunity



Hon. Katherine Polk Failla
October 14, 2024
Page 2 of 2

to raise this significant issue through the issuance of a writ of mandamus before he suffers serious prejudice.

Mr. Storm respectfully requests that the Court issue its decision granting or denying a stay as expeditiously as possible. If a stay is denied, Mr. Storm intends to ask the Second Circuit to order a stay, and the Second Circuit would require time to issue such an order before the impending November 4, 2024 deadline for reciprocal pretrial expert disclosures.

Respectfully submitted,

Brian E. Klein
Keri Curtis Axel
Kevin M. Casey
Waymaker LLP

-and-

David E. Patton
Hecker Fink LLP

*Attorneys for Roman Storm*

# EXHIBIT D



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

October 16, 2024

<u>**BY ECF & EMAIL**</u>

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007



> Re:  ***United States v. Roman Storm***
> **23 Cr. 430 (KPF)**

Dear Judge Failla:

The Government respectfully writes in opposition to the defendant's motion for a stay of the Court's October 10, 2024 decision ordering the parties to exchange expert disclosures in accordance with Rule 16 by November 4, 2024.[1] (Dkt. 87). The defendant seeks this stay pending his forthcoming mandamus petition to the Second Circuit to overturn the Court's decision. As set forth below, the defendant comes nowhere near meeting the standard for such a stay, as he has no likelihood of success in obtaining a writ of mandamus. Accordingly, his motion should be denied.

### I.    Applicable Law

As set forth in *Roseman v. Bloomberg L.P.*, No. 14 Civ. 2657 (DLC), 2017 WL 5176379, at *1 (S.D.N.Y. Nov. 7, 2017), "[t]he standard for evaluating a stay application is well established"—the district court must assess:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (*per curiam*) (citation omitted) (mandamus petition). *See also In re Electronic Books*

---

[1] The transcript of this proceeding is attached here as Exhibit 1 and is referred to herein as "Tr."

*Antitrust Litigation*, 2014 WL 1641699, at *4 (S.D.N.Y. Apr. 24, 2014) (applying standard to Rule 23(f) petition). The Second Circuit applies these same factors in considering whether to vacate a stay. *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007). These factors operate as a "sliding scale" where "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors ... [and][t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (citation omitted). A stay is an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted).

*Id.*

## II.    The Defendant Cannot Meet the Conditions Necessary to Warrant a Stay

All of the stay factors weigh against the defendant's request here.

First, the defendant is not likely to succeed in obtaining a writ of mandamus from the Second Circuit. The common law writ of mandamus "may lie only in exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion," and thus is to be used "sparingly." *In re United States*, 945 F.3d 616, 622-23 (2d Cir. 2019). Accordingly, a petitioner seeking the writ must satisfy the following "three demanding conditions: (1) the petitioner must 'have no other adequate means to attain the relief [it] desires;' (2) the petitioner must satisfy 'the burden of showing that [its] right to issuance of the writ is clear and indisputable;' and (3) the issuing court 'must be satisfied that the writ is appropriate under the circumstances.'" *Id.* at 623 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004)). The Second Circuit has stated that, with respect to the standard for mandamus review, "[t]he ultimate question is simply whether, bearing in mind the exceptional nature of mandamus, [the reviewing court is] left with the 'firm conviction' that the district court's view of the law was incorrect." *Id.* at 625-26 (quoting *In re Int'l Bus. Machines Corp.*, 687 F.2d 591, 600 (2d Cir. 1982)).

Here, the defendant cannot satisfy any of the "demanding" conditions necessary to warrant a writ of mandamus. Far from a "judicial usurpation of power or a clear abuse of discretion," *id.* at 622, the Court's decision mandating expert disclosures consistent with Rule 16 was grounded in multiple bodies of lawful authority, including its inherent power to control the progress of trial to prevent "gamesmanship [from] trump[ing] justice"; the Advisory Committee notes to Rule 16, which strongly suggests that the defendant's interpretation of Rule 16 is contrary to what the Committee intended; and the Court's gatekeeping powers under the Federal Rules of Evidence, including Rules 104 and 702 and the *Daubert* and *Kumho Tire* line of cases. (Tr. 23-25). Put differently, as the Court ably demonstrated in its analysis of the various bodies of law relevant here, the law supports the Court's order and the defendant's disagreements with that order do not come close to showing a "clear and indisputable" right to the exceptional relief he seeks. This ends the inquiry as to whether the defendant can establish to the level of a firm conviction that the Court's decision was incorrect. This, in combination with the strong presumption against the use of mandamus relief, alone requires that the Court deny defendant's motion for a stay.

Second, the defendant will not be "irreparably injured absent a stay." *Citigroup Global Markets Inc.*, 673 F.3d at 162. While the defendant claims that pretrial expert disclosures will force him to prematurely reveal defense strategy, the injury the defendant will suffer is overstated. The reality is that the Court has ordered such disclosures to occur mere weeks—not months—before trial, undermining any claims of harm arising from having to make expert-related disclosures prior to trial. Shedding some light on the defendant's strategy shortly before trial hardly amounts to the "great[] or "serious prejudice" that the defendant claims (Dkt. 87 at 1-2), especially when the alternative would be to order a lengthy mid-trial adjournment to allow the Court and the Government to review the proposed expert testimony to determine whether it complies with Rule 702. Indeed, as the Court will recall, the defense offered to make expert "disclosures short of current Rule 16." (Tr. 19).[2] What the Court is left with here is that the defendant is willing to reveal *some* defense strategy pretrial through a more limited expert disclosure, but objects to the more detailed disclosures required by the Court's order, which, in the defendant's view, will necessarily tip his hand further pretrial. As the Court recognized, this type of "strategic thinking" is a distraction from "the substance of the case." (Tr. 28). The Supreme Court has rejected similar arguments in the analogous context of rules requiring a defendant to make pretrial disclosures of an alibi defense, explaining that "the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 82 (1970); *see also id.* ("The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.").

Third, any harm arising from disclosures mere weeks in advance of trial is far outweighed by the public interest, which heavily favors denying a stay. As the Court explained in ordering pretrial expert disclosures, a preview of this expert testimony is necessary for the fair administration of justice, to avoid substantial delays, and to avoid trial by ambush, which is exactly what Rule 16 was drafted to eliminate. (Tr. 22-25). Moreover, the defendant has an obvious alternative to mandamus relief in the event he is convicted at trial: the normal appeals process post-judgment.

---

[2] The Court noted that, if it had been in defense counsel's shoes, the Court "wouldn't [have] asked [the Government] for" its agreement on more limited expert disclosures because that "won't cut it." (Tr. 19).

## Conclusion

    For all of the foregoing reasons, the Government respectfully requests that the Court deny the defendant's extraordinary motion to stay the Court's October 10, 2024 decision on the timing of expert disclosures pending mandamus review.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By:   _____
        Benjamin A. Gianforti
        Thane Rehn
        Ben Arad
        Assistant United States Attorneys
        (212) 637-2490
        (212) 637-2354
        (914) 993-1907

        Kevin Mosley
        Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)

The Court has reviewed the parties' submissions in connection with Defendant Roman Storm's motion for a stay (Dkt. #87, 89), and understands that Mr. Storm can seek, and should seek, expedited treatment of his mandamus petition from the Second Circuit.  Given that, the Court hereby DENIES Mr. Storm's motion for a stay without prejudice to its renewal on or after **October 31, 2024.**

The Clerk of Court is directed to terminate the pending motion at docket entry 87.  And, in accordance with the Court's October 10, 2024, oral decision (Dkt. #88), the Clerk of Court is further directed to terminate the pending motions at docket entries 79 and 80.

Dated:      October 17, 2024          SO ORDERED.
            New York, New York

                                      _Katherine Polk Failla_

                                      HON. KATHERINE POLK FAILLA
                                      UNITED STATES DISTRICT JUDGE

# EXHIBIT E

| | |
|---|---|
| **From:** | Rehn, Nathan (USANYS) <Nathan.Rehn@usdoj.gov> |
| **Sent:** | Wednesday, October 16, 2024 1:59 PM |
| **To:** | Brian Klein; Gianforti, Benjamin (USANYS); Arad, Ben (USANYS); Mosley, Kevin (CRM) |
| **Cc:** | Keri Axel; Becky James; Kevin Casey; Emily Stierwalt; David Patton; Nick Pavlis; Viviana Andazola Marquez |
| **Subject:** | RE: Request for Stay |

> This email was sent from outside the Firm.

Hi Brian,

We oppose a stay and we would plan to file an opposition to the motion for a stay.

Thanks,
Thane

---

**From:** Brian Klein <bklein@waymakerlaw.com>
**Sent:** Wednesday, October 16, 2024 12:37 PM
**To:** Rehn, Nathan (USANYS) <NRehn@usa.doj.gov>; Gianforti, Benjamin (USANYS) <BGianforti@usa.doj.gov>; Arad, Ben (USANYS) <BArad@usa.doj.gov>; Mosley, Kevin (CRM) <Kevin.Mosley@usdoj.gov>
**Cc:** Keri Axel <kaxel@waymakerlaw.com>; Becky James <bjames@waymakerlaw.com>; Kevin Casey <kcasey@waymakerlaw.com>; Emily Stierwalt <EStierwalt@waymakerlaw.com>; David Patton <dpatton@heckerfink.com>; Nick Pavlis <npavlis@heckerfink.com>; Viviana Andazola Marquez <vandazolamarquez@waymakerlaw.com>
**Subject:** [EXTERNAL] RE: Request for Stay

Thane, after we file our petition for a writ later today, we also plan to file a motion with the Second Circuit seeking a stay. We assume the government opposes that motion too, but please confirm. Also let us know if you plan to file an opposition to that motion so we can note that too in the Second Circuit stay motion. Thank you.

Brian E. Klein
Waymaker LLP
+1 424-652-7814

---

**From:** Rehn, Nathan (USANYS) <Nathan.Rehn@usdoj.gov>
**Sent:** Monday, October 14, 2024 3:07 PM
**To:** Brian Klein <bklein@waymakerlaw.com>; Gianforti, Benjamin (USANYS) <Benjamin.Gianforti@usdoj.gov>; Arad, Ben (USANYS) <Ben.Arad@usdoj.gov>; Mosley, Kevin (CRM) <Kevin.Mosley@usdoj.gov>
**Cc:** Keri Axel <kaxel@waymakerlaw.com>; Becky James <bjames@waymakerlaw.com>; Kevin Casey <kcasey@waymakerlaw.com>; Emily Stierwalt <EStierwalt@waymakerlaw.com>; David Patton <dpatton@heckerfink.com>; Nick Pavlis <npavlis@heckerfink.com>
**Subject:** Re: Request for Stay

Hi Brian,

We oppose your request for a stay.

Thank you,
Thane

Get Outlook for iOS

---

**From:** Brian Klein <bklein@waymakerlaw.com>
**Sent:** Monday, October 14, 2024 2:30 PM
**To:** Rehn, Nathan (USANYS) <NRehn@usa.doj.gov>; Gianforti, Benjamin (USANYS) <BGianforti@usa.doj.gov>; Arad, Ben (USANYS) <BArad@usa.doj.gov>; Mosley, Kevin (CRM) <Kevin.Mosley@usdoj.gov>
**Cc:** Keri Axel <kaxel@waymakerlaw.com>; Becky James <bjames@waymakerlaw.com>; Kevin Casey <kcasey@waymakerlaw.com>; Emily Stierwalt <EStierwalt@waymakerlaw.com>; David Patton <dpatton@heckerfink.com>; Nick Pavlis <npavlis@heckerfink.com>
**Subject:** [EXTERNAL] Request for Stay

DOJ team-

This Wednesday the defense plans to file a petition for a writ of mandamus from the Second Circuit to overturn the Court's October 10 ruling ordering pretrial expert disclosures. In advance of filing the petition, the defense plans to seek a stay from the Court of its October 10 ruling, filing the letter request later today. Please let us know by 7 pm ET today if you consent to our request for a stay so we can advise the Court of the government's position.

Thank you.

-Brian

Brian Klein
Trial Lawyer

WAYMAKER
Waymaker LLP
515 S Flower Street, Suite 3500, Los Angeles, CA 90071
+1 424.652.7814
bklein@waymakerlaw.com  |  waymakerlaw.com  |  vCard  |  Profile

**********************************************************
This message was sent from Waymaker LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
**********************************************************