# EXHIBIT A

Case: 24-2742, 11/01/2024, DktEntry: 42.1, Page 1 of 20

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

IN RE: ROMAN STORM,

*Petitioner*.

No. 24-2742

# MEMORANDUM OF LAW OF *AMICUS CURIAE* NEW YORK COUNCIL OF DEFENSE LAWYERS IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

Christine H. Chung
CHRISTINE H. CHUNG PLLC
33 Park Place, No. 236
New York, New York 10007
(917) 685-0423
christine@thechunglawoffice.com

Noam Biale
SHER TREMONTE LLP
90 Broad Street
New York, NY 10004
(212) 202-2600
nbiale@shertremonte.com

Celeste Koeleveld
CLIFFORD CHANCE
375 Ninth Avenue
New York, New York 10001
(212) 878-3051
celeste.koeleveld@cliffordchance.com

Harry Sandick
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
hsandick@pbwt.com

*Attorneys for Amicus Curiae*

# **TABLE OF CONTENTS**

                                                                                      Page

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF INTEREST OF AMICUS CURIAE ............................................1

ARGUMENT .............................................................................................................3

I.      The Perspective Of NYCDL Is Helpful To The Court In Deciding This Important Issue ...................................................................................3

II.     The District Court Clearly Exceeded Its Authority In Overriding Rule 16(b)(1)(C)(i), The Error Can Only Effectively Be Corrected By Mandamus, And The Ruling Below Has Important Implications For Administering All Rules And Criminal Trials .................................................5

      A.     Trial Efficiency Is Not A Basis For Overriding The Defendant's Rights Under Rule 16(b)(1)(C)(i) ........................................................5

      B.     It Is Not "Gamesmanship" For Defense Counsel To Invoke The Protections Of The Federal Rules ........................................................9

      C.     The Informal Poll Of District Judges Does Not Support Overriding The Defendant's Rights .....................................................11

      D.     Absent Mandamus, The Defendant In This Case And Other Cases Will Suffer Irreparable Harm ...................................................13

CONCLUSION ........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ciminelli v. United States*,
   598 U.S. 306 (2023) .................................................................................... 2

*Daubert v. Merrill Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .................................................................................. 12

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................. 12

*Montague v. United States*,
   144 S. Ct. 2654 (2024) ................................................................................ 2

*Percoco v. United States*,
   598 U.S. 319 (2023) .................................................................................... 2

*In re United States*,
   834 F.2d 283 (2d Cir. 1987) ...................................................................... 13

*United States v. Chastain*,
   No. 23-7038 (2d Cir. 2023) ......................................................................... 3

*United States v. Connolly*,
   24 F.4th 821 (2d Cir. 2022) ........................................................................ 3

*United States v. Coppa*,
   267 F.3d 132 (2d Cir. 2001) ...................................................................... 13

*United States v. Cronic*,
   466 U.S. 648 (1984) .................................................................................... 7

*United States v. Lopez*,
   23-7183(L), 23-7186 (Con) (2d Cir. 2023) ................................................ 3

*United States v. Montague*,
   67 F.4th 520 (2d Cir. 2023), *vacated*, 144 S. Ct 2654 (2024) ..................... 3

*Weatherford v. Bursey*,
   429 U.S. 545 (1977) .................................................................................... 6

**Statutes**

18 U.S.C. § 3500(a) ...........................................................................................10

**Other Authorities**

U.S. Const. amend. VI. .......................................................................................6

Fed. R. Crim. P. 16..................................................................................*passim*

Fed. R. App. P. 29..............................................................................................3

Fed. R. Evid. 702 ........................................................................................5, 12

Merrick B. Garland, U.S. Att'y Gen., Remarks at the Office of Access
   to Justice's *Gideon* Celebration (Mar. 17, 2023),
   https://www.justice.gov/opa/speech/attorney-general-merrick-b-
   garland-delivers-remarks-office-access-justices-gideon ...................................10

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

The New York Council of Defense Lawyers ("NYCDL") is a not-for-profit professional association of approximately 300 lawyers, including many former federal prosecutors and federal public defenders, whose principal area of practice is the defense of criminal cases in the federal courts of New York. NYCDL's mission includes protecting the individual rights guaranteed by the Constitution, enhancing the quality of defense representation, taking positions on important defense issues, and promoting the proper administration of criminal justice. NYCDL offers the Court the perspective of experienced practitioners who regularly handle some of the most complex and significant criminal cases in the federal courts.

NYCDL files this *amicus* memorandum of law, on consent of the parties, in support of Petitioner Roman Storm's petition for a writ of mandamus seeking vacatur of the trial court's determination to order defense expert disclosures in contravention of the plain language of Federal Rule of Criminal Procedure 16(b)(1)(C)(i). This Rule obligates the defendant to make disclosures to the

---

[1] Pursuant to Rule 29.1 of this Court's Local Rules, NYCDL certifies that (1) this brief was authored entirely by counsel for NYCDL, and not by counsel for any party, in whole or part; (2) no party and no counsel for any party contributed money intended to fund preparing or submitting the brief; and (3) apart from NYCDL and its counsel, no other person contributed money intended to fund preparing or submitting the brief.

government relating to its expert witnesses only if the defendant first requests expert disclosure from the government and the government complies with that request.

Review by this Court of the district court's order is important to a core interest of NYCDL: ensuring the protection of the Constitutional rights of criminal defendants, including rights to a fair trial the federal rule was designed to protect. A reading of Rule 16 that permits a trial court to set the rule aside for the sole reason of promoting trial efficiency—as the district judge here did—is impermissible, nullifies the letter and intent of the rule and its drafters, and infringes Constitutional rights.

NYCDL regularly participates as *amicus curiae* in the Supreme Court and in the Second Circuit. In the Supreme Court, NYCDL has recently filed *amicus* briefs in *Ciminelli v. United States*, 598 U.S. 306 (2023) (invalidating right-to-control theory of wire and mail fraud, following government confession of error), and *Percoco v. United States*, 598 U.S. 319 (2023) (reversing conviction that impermissibly permitted jury to convict nongovernment official of honest services fraud). Last term, the NYCDL supported the petitioner in *Montague v. United States*, 144 S. Ct. 2654 (2024), in which the Supreme Court vacated an opinion of this Court "in light of the confession of error by the Solicitor General in her brief." The vacated opinion had upheld the validity of an indictment charging the "continuing criminal enterprise" statute that failed to allege facts sufficient to state

2

the requisite three predicate acts. *See United States v. Montague*, 67 F.4th 520, 528–32 (2d Cir. 2023), *cert. granted, vacated*, 144 S. Ct. at 2654.

In this Court, NYCDL has recently participated as *amicus* in *United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022) (reversing convictions based on insufficiency of government's proof of the making of a false statement in bank and wire fraud prosecution), and in the pending appeals *United States v. Lopez*, 23-7183(L), 23-7186 (Con) (2d Cir. 2023) (presenting question of whether federal wire fraud statutes encompass foreign commercial bribery), and *United States v. Chastain*, No. 23-7038 (presenting question of whether confidential business information that lacks commercial value is "property" under 18 U.S.C. §§ 1341 or 1343) (2d Cir. 2023) (to be argued on November 19, 2024).

## ARGUMENT

### I. The Perspective Of NYCDL Is Helpful To The Court In Deciding This Important Issue

Because the parties have consented to the participation of NYCDL as *amicus*, this brief may be filed without leave of the Court. *See* Fed. R. App. P. 29(a)(2). In addition, NYCDL respectfully submits that its participation here will be both relevant and helpful to the Court. *See* Fed. R. App. P. 29(a)(3)(B) (requiring any motion for leave to include reasons that the proposed *amicus* brief is "desirable" and "relevant"). Because of the extensive experience of its members in defending

3

criminal cases in this Circuit, NYCDL is uniquely positioned to describe the importance and reach of the question presented by Mr. Storm's petition.

The error below, in addition to being plain, cannot effectively be reviewed later in the proceeding because the defense strategy that Rule 16 protects from disclosure, absent a defense request for discovery from the government, will already have been disclosed. This creates high and real-life stakes not only for Mr. Storm, who is being ordered to disclose his defense strategy four weeks before trial and before receiving government discovery that could well affect that strategy, but for criminal defendants in many cases in this Circuit who stand to lose the protection afforded by Rule 16, or other federal rules, based on an interpretation of federal rules similar to that on which the district court relied.

NYCDL thus supports the granting of the granting of a writ of mandamus vacating the district court's pre-trial disclosure order. On October 30, 2024, the Court granted Mr. Storm's request for an emergency stay pending a decision on the mandamus petition, ordered the government to file a response to the petition by November 5. 2024, and scheduled oral argument for November 12, 2024. For reasons set forth herein and in the petition, the writ of mandamus should be granted.

4

## II. The District Court Clearly Exceeded Its Authority In Overriding Rule 16(b)(1)(C)(i), The Error Can Only Effectively Be Corrected By Mandamus, And The Ruling Below Has Important Implications For Administering All Rules And Criminal Trials

### A. Trial Efficiency Is Not A Basis For Overriding The Defendant's Rights Under Rule 16(b)(1)(C)(i)

The question presented in Storm's Petition for Writ of Mandamus (the "Pet.") is whether a trial court's authority to order the defendant to make pre-trial expert disclosures beyond those required by Rule 16 is authorized on the basis of either that court's "inherent authority" to manage criminal proceedings or the authority granted by some other federal rule, such as Federal Rule of Evidence 702. The district court's ruling cannot be squared with the plain language of Rule 16 and ignores the text's Constitutional and policy underpinnings. As construed by the district court, Rule 16 can be disregarded to promote trial efficiency—specifically, to avoid "mid-trial" surprise and "wasting" the jury's time. Pet. Mot., Ex. A (Transcript of Oral Argument dated October 10, 2024) ("Tr."), at 23:22–24. Mr. Storm's single-defendant, three-count trial will last two weeks, in the Government's estimation, *see* July 12, 2024 Tr., 23-cr-00430, Dkt. No. 69 at 107—hardly complex or lengthy in the Districts in the Second Circuit. While "efficiency" is an often-invoked aim, the district court's reasoning below was incorrect—and cannot be correct in any case—because earlier disclosure of the defendant's expert witnesses can *always* be said to promote trial efficiency.

5

The effect of the district court's rationale is to nullify the Rule. It ignores the careful calculus of Congress and the Advisory Committee, who themselves doubtless knew well the "efficiency" implications of the rule they crafted, yet determined that some reduction in "efficiency" was necessary to protect the rights of criminal defendants. U.S. Const. amend. VI (granting fair trial right). As the Petition points out, the "constitutional doubts" harbored by the Advisory Committee about a rule that failed to condition defense expert disclosures on a defendant's choice to trigger reciprocal discovery included a concern about infringement on the defendant's Fifth Amendment right against self-incrimination. *See* Pet. (Dkt. No. 1.1) 7–8 (citing the Congressional Record discussion of the adoption of reciprocal discovery under Rule 16 based on Fifth Amendment concerns). And the Supreme Court has noted that wrongly compelling the disclosure of confidential defense strategy has Sixth Amendment implications. *See Weatherford v. Bursey,* 429 U.S. 545, 553, 558 (1977) (holding that intrusion by informers into counsel-client communications may implicate Sixth Amendment rights).

In a criminal proceeding, the reality that protecting Constitutional rights may require time and effort at the expense of efficiency is not surprising. Many of the provisions enshrined in the Constitution, statutes, and Rules of Criminal Procedure and Evidence render trials less efficient in the name of protecting individual rights. Correctly sequencing events in criminal proceedings is critical when the backdrop

6

to the Constitution's guarantee of a "fair trial"—the very foundation of the American system of justice—is an adversary process. *See, e.g.*, *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.") (citation omitted)

The Advisory Committee note concerning the 1993 amendments to Rule 16, like the Rule itself, is pellucid about the sequence of expert disclosure:

> Like other provisions in Rule 16, subdivision (a)(1)(E) requires the government to disclose information regarding its expert witnesses if the defendant first requests the information. Once the requested information is provided, the government is entitled, under (b)(1)(C) to reciprocal discovery of the same information from the defendant. The disclosure is in the form of a written summary and only applies to expert witnesses that each side intends to call. Although no specific timing requirements are included, it is expected that the parties will make their requests and disclosures in a timely fashion.

Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. To flip the process and allow the government to receive expert disclosure in the absence of a request by the defense, as the district court did here, is a step unsupported by the text or purpose of Rule 16, and one that threatens defendant's Constitutional rights.

Nowhere in the district court's decision overriding this sequence, and eliminating the pre-condition of a request to the government and government compliance, is there even a reference to the requirements of the Constitution. *See*

7

Tr. 1–28. The counter-considerations of disregarding Rule 16—here, the disclosure of a potentially outcome-determinative defense strategy without first learning the contours or contents of the presentation by the government to which the defense will be responding—are not acknowledged. Instead, the district court's ruling makes the cause of serving "efficiency" a one-way ratchet that compels disclosure of confidential defense work product expressly protected by the rule.

Particularly consequential was depriving the defendant of the opportunity to review the government's expert disclosures before making his own—an opportunity which could easily have been afforded, even before trial. The court ordered expert disclosures "in accordance with the current version of Rule 16," Tr. 25:19–20, which requires disclosure of, among other things, a "complete statement of all opinions that the defendant will elicit from the witness in its case-in-chief" as well as the "bases and reasons" for those opinions. *See* Fed. R. Crim. P. 16(b)(1) (C) (iii). In a criminal case, such a disclosure is exceedingly difficult for the defense to make without first knowing the case and opinions that the government intends to present. Forcing the defense to guess at the case that it must meet only results in a greater intrusion on defense work product because it compels defendants to turn over alternative and hypothetical defense strategies. Such disclosures also clearly risk undermining rather than promoting efficiency in the administration of justice, thereby

8

undercutting the asserted basis for imposed obligations on the defense that are contrary to the text and structure of Rule 16.

### B. It Is Not "Gamesmanship" For Defense Counsel To Invoke The Protections Of The Federal Rules

For the district court to have professed a concern with protecting the administration of "justice" from "gamesmanship" or "parlor tricks" adds nothing to the correctness of its ruling. *Id.* at 24:5–6, 27:18. Those comments indeed reveal that the ruling lacks any legal basis at all. Setting aside that the record reveals no reason to cast aspersions on defense counsel's good faith, the trial court's comments simply beg the legal question. It is not "gamesmanship" to ask for enforcement of the letter of a criminal rule, as defense here did.[2] If counsel's reading of the rule is correct, counsel is merely seeking every advantage in their advocacy which the Federal Rules of Criminal Procedure permit them to seek.

This is not only following the Rules—it is precisely the zealous advocacy that every criminal defense lawyer has an ethical obligation to provide. As the Attorney General recognized in recent comments honoring the anniversary of *Gideon v. Wainwright*, "only the presence of counsel zealously defending their clients' rights can ensure public confidence in the legitimacy of judicial proceedings, regardless of

---

[2] The trial court even noted the "paucity of caselaw" addressing the question the parties briefed, *id.* at 21, and instead resorted to seeking "feedback" informally from other district judges. *See infra* pp. 11–12.

9

their outcome."  Merrick B. Garland, U.S. Att'y Gen., Remarks at the Office of Access to Justice's *Gideon* Celebration (Mar. 17, 2023), https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-office-access-justices-gideon.  Far from gamesmanship, this is the core of the defense function.

The charge of gamesmanship is especially misplaced here, as the seeking of advantage in deferring pre-trial disclosures to the greatest extent permitted by law is a tactic the government itself fully embraces in the Southern and Eastern Districts of New York.  That embrace was demonstrated fully in this very proceeding.  Minutes earlier in the same conference in which the trial court ordered the defense to provide Rule 16 expert disclosures, without having requested or received such discovery from the government, the court readily accepted the government's argument that the court was without power to order prosecutors to produce the prior statements of its witnesses at any time before trial commenced, due to the plain text of the Jencks Act. Tr. 6.[3]  Nor, in the experience of the NYCDL membership, was the opposition of the AUSAs in this case to early production of 3500 material an outlier; prosecutors

---

[3] *See* 18 U.S.C. § 3500(a) ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.")

(at least in the Southern and Eastern Districts of New York) routinely withhold 3500 material until just days or weeks before trials in those courts.[4] It is thus ironic, to say the least, that the trial court's order directing the defense to make expert disclosure in contravention of the rule was immediately preceded by the court's stated recognition that it had no authority over the timing of government's disclosures. What was good for the goose here was not good for the gander.

### C. The Informal Poll Of District Judges Does Not Support Overriding The Defendant's Rights

The final justification on which the trial court relied—the "feedback" it sought informally from fellow trial judges in the S.D.N.Y., *see* Tr. 21:19-21, 22:1–13—also lends no support to its decision not to enforce Rule 16. First, it is hardly surprising that trial judges consistently prefer early disclosures to mid-trial surprises or motion practice. As argued above, however, enhancing trial efficiency cannot, in itself, furnish sufficient reason to disregard the letter and intent of Congress and the rulemakers. Trials are always busy events, with many late nights for court and counsel. Eve-of-trial and mid-trial motion practice occurs, precisely because

---

[4] These two Districts are specified because in other Districts, the usual practice is different. NYCDL's membership have received production of 3500 material close in time to arraignment in numerous districts across the country other than the Southern and Eastern Districts of New York, and from Sections of the Department of Justice, accompanied by representations that these disclosures were being made pursuant to the policy or practice of the prosecuting office to voluntarily make disclosures earlier and/or more extensive than statute or case law might require, in their view.

11

ensuring a trial fair to both the government and the defendant requires adjudicating certain issues *during* trial. Federal Rule of Evidence 702 and the Supreme Court's decisions in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), doubtless require that the admissibility of certain expert testimony be given judicial scrutiny; Rule 16(b)(1)(C)(i) expresses the judgment that in order not to compromise the defendant's rights under Rule 16 or the Constitution, that scrutiny may need to take place at or during trial.

More fundamentally, a shortcoming of the court's informal poll (or any poll) is that the circumstances of each case matter. Here, for example, the trial court said nothing about factors like how long or complicated the trial is expected to be, nor did it explore ways of determining whether the legal questions presented by the clash of experts were novel or quotidian, other than by simultaneous expert disclosure of all of the expert-related materials specified by the Rule.[5] The trial court considered no alternative or tailored form or sequence of disclosure less damaging to the defendant's rights than such an exchange.

In short, the blunt instrument the district court deployed cannot be justified by the outcome of its polling.

---

[5] The trial court set the same deadline of November 4, 2024 for each party's disclosures. Tr. 25:17–21.

12

### D. Absent Mandamus, The Defendant In This Case And Other Cases Will Suffer Irreparable Harm

Finally, the district court's description that Mr. Storm's case is "important" and "triable," Tr. 27:10–12, highlights the irreparable harm Petitioner will suffer unless the writ of mandamus is granted. When experts clash in criminal cases, the jury's assessment of the clash of testimony is often outcome-determinative. To order an accused to give the government a preview of potential defense expert testimony a month before jury selection begins invades core attorney work product and in a consequential way. Once the defense work strategy is disclosed, the government can never "unlearn" it. Mandamus is a writ this Court has repeatedly granted when the government has sought review of pre-trial disclosure orders, *see United States v. Coppa*, 267 F.3d 132, 146–47 (2d Cir. 2001) (granting mandamus and remanding after district court ordered "immediate disclosure of all exculpatory and impeachment evidence"); and *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987) (granting mandamus and remanding because district court lacks authority to order pre-trial production of Jencks Act material). Petitioner is entitled to the same relief.

The broad sweep of the trial court's ruling also has clear implications for criminal proceedings beyond the Petitioner's. Reliance on experts in criminal cases is not uncommon in this Circuit, where the U.S. Attorney's Offices frequently bring complex white-collar cases, prosecutions that test the limits of statutory crimes, and cases involving cross-border crimes. Further, the administration and fairness of

13

many aspects of *all* criminal proceedings are governed by rules, and to disregard rules in the name of "efficiency" is insufficiently protective of the rights of the accused, including the right to a fair trial. Efficiency is a goal that is popular and easy to invoke. But if efficiency itself is sufficient to override the plain language of criminal rules, many of the protections that define our system of criminal justice will inevitably fall by the wayside.

In sum, the issue presented by Mr. Storm's petition is an important one in ensuring the protection of Constitutional rights and the fair administration of justice. This Court should rule in his favor, including for the purpose of giving clear guidance on issues that commonly arise in criminal proceedings. The writ of mandamus should be granted.

## CONCLUSION

Petitioner Storm's mandamus petition should be granted.

| | |
|---|---|
| Dated: New York, New York<br>November 1, 2024 | Respectfully submitted, |

Christine H. Chung
CHRISTINE H. CHUNG PLLC
33 Park Place, No. 236
New York, New York 10007
(917) 685-0423
christine@thechunglawoffice.com

Noam Biale
SHER TREMONTE LLP
90 Broad Street
New York, NY 10004
(212) 202-2600
nbiale@shertremonte.com

Celeste Koeleveld
CLIFFORD CHANCE
375 Ninth Avenue
New York, New York 10001
(212) 878-3051
celeste.koeleveld@cliffordchance.com

Harry Sandick
PATTERSON BELKNAP WEBB &
  TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
hsandick@pbwt.com

*Attorneys for Amicus Curiae New York Council of Defense Lawyers*

15